32 A.3d 174

**SUPERVISOR OF ASSESSMENTS OF BALTIMORE COUNTY**

v.

**GREATER BALTIMORE MEDICAL CENTER, INC.**

No. 2060, Sept. Term, 2009.

Court of Special Appeals of Maryland.

Dec. 1, 2011.

William K. Hammond (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellant.

Walter R. Calvert (Christopher S. Davidson, Venable LLP, on the brief), Baltimore, MD, for Appellee.

Panel: KRAUSER, C.J., WOODWARD, WRIGHT, JJ.

WOODWARD, J.

The Supervisor of Assessments of Baltimore County ("the Supervisor"), appellant, challenges the Maryland Tax Court's ("Tax Court") determination that Greater Baltimore Medical Center, Inc. ("GBMC"), appellee, a non-profit hospital, was the owner of an office building and parking garage ("the Improvements") built on GBMC's land, thereby qualifying GBMC for a charitable property tax exemption. GBMC owned a tract of land that it leased to Baltimore Hospital Investors LLC ("BHI LLC"), a for-profit Delaware limited liability company, which was established to aid in financing the construction of the Improvements. BHI LLC then leased the same tract of land back to GBMC, with an agreement that GBMC, as agent for BHI LLC, would build the Improvements on the land and the lease would thereafter include the Improvements. After construction of the Improvements, an agent for GBMC and BHI LLC filed an application for a charitable tax exemption for the land and the Improvements with the Supervisor. The Property Tax Assessment Appeals Board ("Tax Appeals Board") ultimately denied the charitable tax exemption application. GBMC appealed the denial to the Tax Court, which reversed the Tax Appeals Board's decision, and granted the charitable tax exemption, because GBMC was the "sole and exclusive owner of the [I]mprovements for Maryland real property tax purposes and for purposes of satisfying the ownership requirement under the charitable exemption statute." The Supervisor filed a petition for judicial review of the Tax Court's ruling in the Circuit Court for Baltimore County. The circuit court affirmed the Tax Court's ruling.

On appeal, the Supervisor presents two questions for review by this Court, which we have consolidated into one question: [1]

---

1. The Supervisor originally presented the following questions to this Court:

 1. Did the Maryland Tax Court [ ("Tax Court") ] err in finding that a non-profit hospital owned an office building and parking garage

1. Did the Tax Court err in determining that GBMC, as a nonprofit hospital, was the owner of an office building and parking garage for real property tax purposes and thus satisfied the ownership requirement under the charitable exemption statute? [2]

For the reasons set forth herein, we shall affirm the judgment of the circuit court, thereby upholding the decision of the Tax Court.

## BACKGROUND

As set forth by the Tax Court, the facts are as follows:

GBMC owns a 4.5[-acre] parcel adjacent to GBMC Hospital in Towson, Maryland. GBMC's main campus, the medical center campus, includes over a million square feet of office space, with parking garages, located on several adjoining tax parcels of land. During 2004, GBMC began construction of a new medical office building, together with an adjacent parking garage, within the medical center campus. The building was constructed and is now occupied for

---

for property tax purposes when the evidence demonstrated that a for-profit corporation actually owned the improvements and leased them back to the non-profit hospital?

2. Did the [ ] Tax Court err in granting a charitable purposes tax exemption for an office building and parking garage owned by a for-profit LLC and for the land on which they were built, where the for-profit LLC leased the land from a non-profit hospital and leased the improvements back to the hospital?

**2.** The Tax Court also held that, as the record owner of the land and the Improvements, GBMC was entitled to a charitable exemption to the extent that it satisfied the "use requirement" of the charitable exemption statute. *See* Md.Code (1985, 2007 Repl. Vol), § 7–202(b)(1)(i) of the Tax–Property Article ("T.P."). The Tax Court then remanded the case to the Supervisor for the purpose of determining "whether the uses of the property satisfy the other requirements of the statute." The Supervisor appears to claim that the "use requirement" was not satisfied, because "the land and buildings are used for commercial purposes." We will not address this issue, because, as indicated by the Tax Court, the Supervisor must make the initial determination of the extent to which the "use requirement" has been satisfied by GBMC. That determination then will be subject to review by the Property Tax Assessment Appeals Board, then the Tax Court, and the circuit court before it can be properly brought before this Court.

medical office use by for-profit and non-profit providers. The garage is used for parking cars of visitors to that building and other nearby facilities.

The financing for the construction of the improvements, together with related infrastructure improvements, was arranged through a structured lease and leaseback financing arrangement, which may be referred to as "structured leased financing." The evidence indicates that the financing structure was necessary in order to avoid additional debt on the financial balance sheet of GBMC.

GBMC ground leased the vacant land to BHI LLC, as tenant, pursuant to a Lease Agreement (["]Ground Lease["]) dated August 6th, 2004. BHI LLC was a special purpose entity established to facilitate the financing of the improvements on the land. The initial term of the Ground Lease was for approximately fifty-one years with an additional ten year option. The Ground Lease provides that, upon expiration of the term of the Ground Lease, the land and improvements revert back to GBMC. BHI LLC owns and has title to the improvements during the Ground Lease term, subject to the reversion to GBMC upon the expiration of the initial term and the additional term if the lease is extended.

BHI LLC leased the improved property after construction back to GBMC for twenty-six years with seven five year options under an Improvement Lease ("[ ] Improvements Lease") dated April 6 [th],2004. Under Section 34(a) of the Improvements Lease, BHI LLC retains title to the improvements during the leaseback term. In the event GBMC defaults on its obligations, BHI LLC has the right to re-enter and take possession of the land and improvements constructed thereon and re-lease the property.

BHI LLC obtained the funds to construct the improvements through Legg Mason Mortgage Capital Corporation [ ], which loan was evidenced by a Note and a Leasehold Deed of Trust to [Legg Mason Mortgage Capital Corporation]. The leaseback to GBMC required GBMC to use the funds of the loan to cause the improvements to be construct-

ed as agent of the investor in accordance with the terms of the Improvements Lease.

Petitioner contends that the lease and leaseback form of financing structure insure that the record title to the land and the improvements remained with GBMC throughout the term of the Ground Lease. GBMC is assured of the ultimate reversion of land and all of the improvements at the end of the term of the Ground Lease. Financing allows GBMC to make payments to the Investor pursuant to the Improvements Lease assuring the Investor of having adequate funds to repay the lender under the Note while providing an investment return to BHI LLC. The Ground Lease and Improvements Lease effectively make GBMC responsible and liable for all obligations incident to the ownership and operation of the land and improvements. The financing allows GBMC to avoid having to report the financing transaction as debt on its financial statements, while allowing the Investor rights to the use and occupancy of the land and improvements for the remaining term of the Ground Lease. Consequently, GBMC is obligated for the periodic payment of rent, as opposed to a payment of debt service on an outstanding debt on its financial statements.

On March 15, 2006, Curtis Campbell, agent for BHI LLC and GBMC, applied for a charitable property exemption on behalf of "B[HI LLC] leased to GBMC" with the Supervisor. After filing the charitable exemption application, Campbell met with assessors from the Maryland State Department of Assessments and Taxation ("SDAT"), who then denied the application. Campbell appealed the denial to the Tax Appeals Board, and, on March 10, 2008, the Tax Appeals Board denied the application for charitable exemption, because "[a]ppellant is not legal owner of the property as required by law." The record is unclear, however, to whom the Tax Appeals Board was referring when it stated that "[a]ppellant is not legal owner."

On March 21, 2008, GBMC filed an appeal to the Tax Court from the charitable exemption denial. After a hearing, the Tax Court, on December 29, 2008, vacated the denial of the

charitable exemption and remanded the case to the Tax Appeals Board and then to the Supervisor. The Tax Court held that "[f]or the purposes of Maryland real property tax exemption law, GBMC [wa]s clearly the record owner of both the land and the improvement[s], and, therefore, [wa]s entitled to the charitable exemption."

On January 23, 2009, the Supervisor filed a petition for judicial review of the Tax Court's December 29, 2008 ruling in the Circuit Court for Baltimore County. In an order entered on October 15, 2009, the circuit court affirmed the Tax Court's ruling, finding a "sufficient reasonable basis for the Tax Court's Decision."

The Supervisor filed a timely notice of appeal to this Court. Additional facts will be set forth below as necessary to resolve the question presented.

## DISCUSSION

### The Parties' Contentions

The Supervisor argues that the Tax Court erred as a matter of law when it found that GBMC, and not BHI LLC, owned the Improvements situated on the land owned by GBMC. According to the Supervisor, the "holder of legal title to property is the owner for property tax assessment purposes," and thus only the holder of legal title to a property may qualify for an exemption for that property. The Supervisor concedes that he "generally relies on the land records to establish ownership, *i.e.*, legal title, for real property on the assessment roll." The Supervisor, however, points to the recorded Reciprocal Parking Easement Agreement and Leasehold Deed of Trust, the unrecorded Ground Lease,[3] Improvements Lease, and Construction Escrow and Security Agreement to show that BHI LLC was the owner of the Improvements for the 2006–2007 tax year. The Supervisor argues that the Tax Court ignored these documents, "de-

---

3. A Memorandum of Lease was recorded regarding the Ground Lease. We will discuss the Memorandum of Lease in the Discussion section.

priv[ing] the documents of the[ir] legal significance," and, in effect, "disregarded the manifest evidence that the [I]mprovements were owned by BHI LLC." The Supervisor concludes that, because BHI LLC is the owner of the Improvements, only BHI LLC can apply for a tax exemption on the Improvements, and as a for-profit company, BHI LLC does not qualify for the charitable tax exemption.[4]

In the alternative, the Supervisor contends that ownership for real property tax purposes is not limited to "ownership of title to the land," but also includes "certain lesser interests in real property, such as the interest of a mortgagor or grantor under a deed of trust" under Maryland Code (1985, 2007 Repl.Vol.), § 6–102(d)(3) of the Tax–Property Article ("T.P."). The Supervisor contends that, because BHI LLC is the grantor under a leasehold deed of trust, BHI LLC "qualifies as the owner of the [I]mprovements" for property tax purposes.

GBMC responds that "[t]he established rule in Maryland is that the record owner is the owner of real property for tax purposes and the assessor is neither required nor permitted to go beyond the land records in determining the person to whom property is assessable." GBMC argues that, because GBMC was the uncontested record owner of the land when it contracted for the Improvements, then GBMC remains the owner of the Improvements "unless it has otherwise conveyed away its ownership interest." GBMC contends that "[m]ere conveyances of leasehold interests in realty do not divest ownership" and that "the Supervisor has effectively acknowledged that there are no recorded documents that convey

---

4. The Supervisor also contends that the Tax Court "erroneously concluded" that the SDAT recognized GBMC as the owner of the building under Md. Regs.Code tit. 18, § .02.01.01A (1997) ("COMAR"). According to the Supervisor, under COMAR 18.02.01.01A, where the land and the improvements sitting on the land are separately owned, SDAT sends the notice of assessment to only the landowner for "purely administrative purposes." The Supervisor argues that "such regulations do not change who is the legal owner" of the improvements. As we will explain, whether SDAT sends the notice of assessment for the land and improvements to the landowner for only "purely administrative purposes" does not, however, affect our ruling in this appeal.

ownership of the Improvements away from GBMC." GBMC concludes that it has record title to the Improvements and thus is the owner of the Improvements for real property tax purposes.

GBMC also argues that the Supervisor mistakenly asks this Court to rely on unrecorded leases and on recorded documents to which GBMC was not a party. According to GBMC, "references in unrecorded leases have no bearing on the ownership determination for Maryland real property tax purposes because they do not alter record title." GBMC agrees with the Tax Court that "the terms of the lease agreements merely served to establish the contractual relationships between GBMC, BHI LLC, and the Lender." GBMC claims further that, even if BHI LLC is the owner of the Improvements for federal income tax or financial accounting purposes because of the contractual documents, "[o]wnership for Maryland real property tax purposes is simply determined under an ownership test that is different from that used for these other purposes."

GBMC claims that T.P. § 6–102(d)(3) actually supports its position that GBMC remains the "owner" of the Improvements for real property tax purposes, because that section provides for the taxation of an interest of a mortgagor or a grantor under a deed of trust. As GBMC explains, its role, and not BHI LLC's role, in the "lease and leaseback financing structure is analogous to that of a mortgagor or grantor under a deed of trust." Thus, according to GBMC, a mortgagor or grantor under a deed of trust, like GBMC, "continues to be treated as the owner of the realty despite having granted a security interest in the realty in favor of the lender."

## Standard of Review

■ As an administrative agency, the Tax Court's decisions are reviewed under the "same appellate standards generally applied to agency decisions." *Comptroller of the Treasury v. Johns Hopkins Univ.*, 186 Md.App. 169, 181, 973 A.2d 256 (2009). As this Court set forth in *Comptroller of the Treasury v. Johns Hopkins Univ.*:

We review the decision of the Tax Court, not the ruling of the circuit court on judicial review. The Tax Court's factual findings are reviewed for substantial evidence in the record. Under the substantial evidence test, a factual finding must be upheld if it is such that a reasoning mind reasonably could have found it from the agency record (here, the evidence before the Tax Court). Even if the Tax Court does not state the reasons for its decision, reversal is not required if the record discloses substantial evidence supporting the decision.

Likewise, we review the Tax Court's mixed findings of fact and law for substantial evidence in the agency record. Determinations involving mixed questions of fact and law must be affirmed if, after deferring to the Tax Court's expertise and to the presumption that the decision is correct, a reasoning mind could have reached the Tax Court's conclusion. We are not so constrained in our review of the Tax Court's decisions of law. Ordinarily, that review is *de novo*. Yet, even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.

*Id.* at 181–82, 973 A.2d 256 (citations and quotations omitted).

### Record Ownership

 All real property located in Maryland is taxable to the owner of the real property by the SDAT. T.P. § 6–101(a)(1). It is clear that, under Maryland law, the record owner, as listed in the land records, is the owner of real property for tax assessments purposes. *Mayor & City Council of Baltimore v. Boitnott*, 356 Md. 605, 617, 619, 741 A.2d 1079 (1999); *Johns Hopkins Univ. v. Bd. of County Comm'rs of Montgomery County*, 185 Md. 614, 617, 45 A.2d 747 (1946). Under T.P. § 1–101(dd)(1), real property is defined as "any land or improvements to land." *See also* Black's Law Dictionary 1218 (6th ed. 1990) (defining "real property" as "[l]and,

and generally whatever is erected or growing upon or affixed to land."). Improvements are "such things as are placed thereon by the way of betterments which are of a permanent nature and which add to the value of the property as real property ... includ[ing] buildings and structures of every kind." *Allentown Plaza Assocs. v. Suburban Propane Gas Corp.*, 43 Md.App. 337, 346, 405 A.2d 326 (1979) (quotations omitted). Consequently, improvements affixed to the land are "considered part of the real property," and "ownership of the improvements follows title to the land." 41 Am.Jur.2d Improvements § 3 (2005). *See also Allentown Plaza Assocs.*, 43 Md.App. at 345 n. 9, 405 A.2d 326 ("Things of a personal nature or buildings or other structures upon the land, which have been so fixed to land as to become a part thereof ... pass with the land ....") (quotations omitted). Thus, subject to express statutory exceptions that are not applicable in the instant case,[5] the owner of real property according to the land records also owns the improvements built thereon. It follows then that, for someone other than the record landowner to own the improvements on the land, there must be a recorded deed or other instrument of record showing a transfer of the title to the improvements to another owner. *See* Md.Code (1974, 2010 Repl. Vol), § 3–101 of the Real Property Article ("R.P.").[6]

---

5. *See, e.g.,* Md.Code (1974, 2010 Repl. Vol), § 11–101, *et seq.* of the Real Property Article (The Maryland Condominium Act).

6. The Supervisor relies on *State v. Attman/Glazer P.B. Co.*, 323 Md. 592, 594 A.2d 138 (1991) and *West v. Flannagan*, 4 Md. 36 (1853) to argue that "[t]he ownership of improvements on leased land is determined by the intentions of the parties as evidenced by the terms of the lease." *Attman/Glazer*, however, only addressed the issue of *contractual* ownership of improvements, and not *record* ownership of the improvements. *See Attman/Glazer*, 323 Md. at 608–609, 594 A.2d 138 (concluding that provision in parties' lease agreement regarding ownership of improvements governed issue of additional rent payments). As explained above, record ownership, and not contractual ownership, demonstrates ownership of the improvements for real property tax purposes. We further note that *West* did not even address ownership of improvements, and instead held that in a tenancy termination case, an implied agreement could not supplant an express agreement. *West,* 4 Md. at

■ In the case *sub judice*, at the trial before the Tax Court, GBMC introduced evidence indicating that GBMC was the owner of the land and the Improvements according to the land records. When questioning GBMC's Executive Vice President and Chief Financial Officer, Eric L. Melchior, GBMC's counsel introduced into evidence a "printout" from the SDAT website, which lists "Greater Baltimore Medical Center, Inc." as the owner of "4.497 AC PT LT 1 MOB," *i.e.*, the land and the Improvements, and shows no "transfer" of the land or the Improvements under the "Transfer Information" section. During the introduction of the SDAT document into evidence, the following exchange took place:

[GBMC' S COUNSEL]: Q. And I'd like to show you next a printout from the SDAT['s] website, which is the basic website one goes to for this—for real property tax purposes to see who owns what.

One aside, Your Honor, if we could here? I'd like to talk to [the Supervisor's counsel] on the record here about this document.

[Supervisor's counsel], this speaks of the account number we're dealing with being a particular account number 240013547. I thought we should confirm for the Court, or stipulate that we agree that is the property we're dealing with . . . .

[SUPERVISOR'S COUNSEL]: This appears to be the correct account number for that property, yes.

[GBMC' S COUNSEL]: Again 240013547 should be the right account number for what we're dealing with.

Q. I'm going to show you this. This is, again, merely a printout

---

56. Accordingly, *Attman/Glazer* and *West* are inapposite to the case *sub judice*.

| | from the [SDAT], the State depart-ment that handles real property tax matters. And if I could ask you what it shows for this parcel, which was agreed is the parcel we're talking about, who the State has noted as the owner of the parcel? |
|---|---|
| [WITNESS]: | GBMC Medical—or Greater Baltimore Medical Center, Inc. |
| [GBMC'S COUNSEL]: | And is that consistent with your expectations as to who would show up in the Land Records in the State of Maryland . . . |
| [WITNESS]: | Yes. |
| [GBMC'S COUNSEL]: | . . . as owning the land and improvements involved here? |
| [WITNESS]: | Yes. |
| [GBMC' S COUNSEL]: | I'd like to move that for admission . . . |
| | * * * |
| [TAX COURT]: | Do we have any objection to the [SDAT] document you're referring to being introduced into evidence? |
| [SUPERVISOR'S COUNSEL]: | No. |

GBMC thus introduced the SDAT document into evidence before the Tax Court to demonstrate that, according to the land records, GBMC is the record title owner of the land and the Improvements. The Supervisor did not object to the introduction of such a document as evidence of record title ownership of the land and Improvements.

The Supervisor, however, argues that BHI LLC is the owner of the Improvements and that its ownership of the Improvements was "established" by the Ground Lease, Memorandum of Lease, Improvements Lease, Construction Escrow and Security Agreement, Reciprocal Parking Easement, and

Leasehold Deed of Trust, all of which were dated April 6, 2004. The Memorandum of Lease, Reciprocal Parking Easement, and Leasehold Deed of Trust, however, were the only documents recorded in the land records. We will address each of the documents relied on by the Supervisor in chronological order.

GBMC, the landlord, entered into an unrecorded Ground Lease with BHI LLC, the tenant. In the Ground Lease, GBMC leased to BHI LLC "all of [GBMC]'s right, title and interest in the Leased Property," with "Leased Property" defined as "collectively, the Land, the Improvements, the Building Systems and the Appurtenant Rights." Paragraph 10(a) of the Ground Lease provides:

> Landlord and Tenant acknowledge and agree that: (a) as of the date of this Lease no material improvements exist on the Land (excluding, however, the Meeting House), and (b) pursuant to the Construction Escrow Agreement, Tenant shall cause Landlord (as its agent) to cause the MOB and Parking Garage and related Improvements to be constructed in accordance with the terms and conditions of the Construction Escrow Agreement (the **"Initial Improvements"**)

(Emphasis in original).

Pursuant to the Ground Lease's "Recording" section,[7] a Memorandum of Lease was recorded in the Baltimore County land records. Except for the metes and bounds description of the Leased Property and the signatures of the parties, the Memorandum of Lease states, in its entirety:

---

7. The "Recording" section of the Ground Lease stated:

 31. *Recording.* Landlord and Tenant will execute, acknowledge, deliver and cause to be recorded or filed or, at Landlord's expense, registered and re-recorded, refiled or re-registered in the manner and place required by any present or future law, a memorandum of this Lease, and all other instruments, including, without limitation, releases and instruments of similar character, which shall be reasonably requested by Landlord or Tenant as being necessary or appropriate to protect their respective interests in the Leased Property.

THIS MEMORANDUM OF LEASE (this "Memorandum") made as of the 6 day of April, 2004, is between **GREATER BALTIMORE MEDICAL CENTER, INC.** ("Landlord"), with an address of 6701 North Charles Street, Baltimore, Maryland, 21204, Attention: Chief Financial Officer; and **BALTIMORE HOSPITAL INVESTORS LLC**, a Delaware limited liability company ("Tenant"), with an address of c/o Net Lease Capital Advisors, Inc., One Tara Boulevard, Suite 403, Nashua, New Hampshire 03062, Attention: Douglas F. Blough, Chief Financial Officer.

1. *Description of Lease.* By Lease Agreement made as of the same date as this Memorandum between Landlord and Tenant (the **"Lease"**),[8] Landlord has leased to Tenant certain real property located in Baltimore County, Maryland, as more particularly described below. The parties hereto desire to enter into this Memorandum to give record notice of the existence of the Lease.

2. *Description of Leased Property.* Subject to the terms and conditions of the Lease, the Leased Property consists of the Land described on *Schedule A* attached to this Memorandum of Lease, together with the Appurtenant Rights (as defined in the Lease). Subject to the terms of the Lease, Landlord has also granted to Tenant certain Easements (as defined in the Lease) in, over and across Landlord's Adjacent Parcel (as defined in the Lease).

3. *Term; Renewal Term.* The Basic Term of the Lease commenced on the date set forth at the top of page 1 of this Memorandum and expires on March 31, 2055 (the **"Basic Term"**). Tenant has one (1) option to renew the term of the Lease for a period of ten (10) years, which option must be exercised by Tenant not less than one hundred eighty (180) days before to the

---

8. "Lease" refers to the Ground Lease entered into by GBMC and BHI LLC on April 6, 2004.

expiration of the Basic Term, as provided in the Lease

IN WITNESS WHEREOF, the Landlord and Tenant have caused this Memorandum to be duly executed as of the day and year first above written.

BHI LLC, as Landlord, and GBMC, as Tenant, then entered into an unrecorded Improvements Lease, in which BHI LLC leased back to GBMC all of BHI LLC's "right, title and interest in the Leased Property, including an approximate 127,000 square foot medical office building [ ], an approximate 1,077 space parking garage [ ] and related improvements to be constructed on the Land in accordance with this Lease and the Construction Escrow Agreement." Paragraph 33(v) of the Improvements Lease states, in relevant part, that "[f]ee simple title to the Project, [defined collectively as the medical office building, parking garage, and related improvements], and a leasehold interest in the land upon which the Project is located is vested in [BHI LLC]." Paragraph 34(a) reiterates: "Title to the Project shall at all times be vested solely in [BHI LLC]." Like the Ground Lease, the Improvements Lease also requires GBMC to "construct the M[edical Office Building], the Parking Garage and related Improvements (collectively, the **"Project"**), as [BHI LLC]'s agent, in accordance with and subject to the terms and conditions of the Construction Escrow Agreement."

BHI LLC, as the borrower, and GBMC, as the tenant, entered into an unrecorded Construction Escrow and Security Agreement with Legg Mason Mortgage Capital Corporation, as the lender and Escrow Agent. The Construction Escrow and Security Agreement states that GBMC "holds fee simple title" to the land and that BHI LLC "holds a leasehold interest in the Land and certain appurtenant easements thereto, and fee simple title in and to the Improvements."

GBMC and BHI LLC entered into a recorded Reciprocal Parking Easement Agreement. The Reciprocal Parking Easement Agreement (the "Easement Agreement") states that GBMC is the "owner" of approximately 72 acres of land

(the "Campus") of which the land subject to the Ground Lease is a part. According to the Easement Agreement, GBMC "currently owns and operates a hospital and certain other medical office buildings, parking garages, surface parking areas and related improvements on the Campus." The Easement Agreement further provides, in relevant part, that pursuant to the Ground Lease, GBMC

> will cause to be constructed on the Leased Premises, as agent for [BHI LLC], an approximately 127,000 square foot medical office building (the **"New MOB"**) and an approximately 1,077 parking space garage (the **"New Parking Garage"**). During the term of the Ground Lease, [BHI LLC] will own the New MOB and New Parking Garage.

Finally, the Easement Agreement sets forth its purpose:

> [GBMC] and [BHI LLC] desire to provide for a flexible arrangement for the parking of vehicles on the Campus by allowing users and occupants of [GBMC]'s current and future improvements to the park in the New Parking Garage and to allow users and occupants of the New MOB to park in certain parking garages and surface parking areas located on the Campus, all on the terms and conditions set forth herein.

Lastly, BHI LLC, as the borrower, entered into a recorded Leasehold Deed of Trust, Security Agreement, Assignments of Leases and Rents and Fixture Filing ("Leasehold Deed of Trust") with Richard A. Jacobs and W. Kyle Gore, as trustees, for the benefit of Legg Mason Mortgage Capital Corporation, the lender. GBMC was *not* a party to the Leasehold Deed of Trust. In the Leasehold Deed of Trust, BHI LLC granted to the trustees, for the benefit of the lender, a "security interest in all B[HI LLC]'s right, title, and interest in and to the following property, rights, interests and estates, including any portion or interest therein, whether now owned or hereafter acquired by [BHI LLC]," which included, among other things, BHI LLC's "leasehold estate created under the Ground Lease" and "the Improvements." In the Leasehold Deed of

Trust, BHI LLC also warranted that it had "good title" to the leasehold estate and to the Improvements.

In sum, of the documents relied upon by the Supervisor, only the Memorandum of Lease, Easement Agreement, and Leasehold Deed of Trust were recorded in the land records. Although the Easement Agreement and Leasehold Deed of Trust acknowledge that BHI LLC is the owner of the Improvements, there is no language in these recorded documents transferring GBMC's record title ownership of the land or the Improvements to BHI LLC. This result is corroborated by the "printout" for the land and Improvements on the SDAT's own website, which states that GBMC is the owner of the land and the Improvements for real property tax purposes.

The unrecorded documents relied upon by the Supervisor do not compel a different conclusion. R.P. § 3–101 requires all transfers in property ownership to be recorded. Consequently, none of the unrecorded documents can effect a transfer of the record ownership of the land or the Improvements from GBMC to BHI LLC. These documents, at most, show a *contractual* ownership of the Improvements by BHI LLC; they do not show title or record ownership of the Improvements by BHI LLC. In other words, record title always remained in GBMC, even if contractual ownership of the Improvements was held by BHI LLC.

> As the Tax Court aptly stated,
> the lease and leaseback financing documents . . . merely serve to establish the contractual arrangements. . . . [U]nder Maryland law, these references and agreements in no way alter GBMC's capacity as title owner of record of the land and improvements thereon; and, thus, it must be concluded that GBMC is the sole and exclusive owner of the improvements for Maryland real property tax purposes and for purposes of satisfying the ownership requirement under the charitable exemption statute.

The Supervisor, however, claims reliance on "numerous other authorities" to conclude that "where improvements and the land on which they sit are owned by different parties, the

improvements are taxed based on the ownership of the improvements, not the ownership of the land," and, therefore, BHI LLC should be taxed on the Improvements. The Supervisor's argument, however, presupposes that the land and the Improvements are owned *of record* by different parties, when, as established above, they are not.

Furthermore, the "authorities" cited by the Supervisor are inapplicable to the case *sub judice.* The Supervisor relies on *Meade Heights, Inc. v. Tax Comm'n,* 202 Md. 20, 95 A.2d 280 (1953), in which the United States government leased a parcel of federally-owned land to Meade Heights upon which Meade Heights was to construct housing units. *Id.* at 23–24, 95 A.2d 280. Under the predecessor statutory provision to T.P. § 6–101(a)(2), the Court of Appeals concluded that Meade Heights could be taxed for its leasehold interest in the housing units. *Meade Heights,* 202 Md. at 27, 95 A.2d 280. That statutory provision allowed for assessment and taxation by the State of Maryland for property *"owned or leased by the United States, or any agency or department of the United States." Id.* at 25, 95 A.2d 280 (emphasis added). *Meade Heights* is thus inapplicable to the instant case, because it addresses the taxation of real property leased by a private party from the *federal government,* and none of the parties here are agencies or departments of the federal government.

The conclusion in *Meade Heights* was later recodified in T.P. § 6–102(e), which provides for the taxation of

> the interest or privilege of a person in property that is *owned by the federal government, the State, a county, a municipal corporation, or an agency or instrumentality of the federal government, the State, a county, or a municipal corporation* is subject to property tax as though the lessee or the user of the property were the owner of the property, if the property is *leased* or otherwise made available to that person:
>
> (1) *by the federal government, the State, a county, a municipal corporation, or an agency or instrumentality of*

*the federal government, the State, a county, or a municipal corporation;* and

(2) with the privilege to use the property in connection with a business that is conducted for profit.

(Emphasis added). *See also* 93 *Op. Att'y Gen. Md.* 12 (2008).

Two additional authorities relied upon by the Supervisor—an unreported Tax Court decision, *Dollar Thrifty Automotive Group v. Supervisor of Assessments of Anne Arundel* County, Md. Tax Court Case Nos. 06–RP–AA–0216 through 06–RP–AA–0220 (August 14, 2007), and a Maryland Attorney General opinion, 55 *Op. Att'y Gen. Md.* 339 (1970)—address the application of T.P. § 6–102(e). Similar to the Court of Appeals in *Meade Heights,* the Tax Court and the Attorney General, respectively, concluded that the lessee could be taxed on the buildings constructed by the lessee on land leased from the State. *Dollar Thrifty,* Md. Tax Ct. Nos. 06–RP–AA–0216 through 06–RP–AA–0220 at 5–6. These authorities are inapplicable here for the same reason—they deal specifically with buildings constructed on land leased from *the State,* and neither GBMC nor BHI LLC is an agency of the State.[9]

Finally, our conclusion is supported by opinions authored by SDAT's counsel, Kaye Brooks Bushel, dated May 20, 1982 and May 18, 1983.[10] These opinions addressed financing transactions similar to those in the case *sub judice.* The 1982 opinion involved land improved by a parking garage owned by Johns Hopkins Hospital ("JHH") and thus was tax exempt. JHH proposed to lease the land underlying the garage to a limited

---

**9.** The Supervisor contends that GBMC cannot argue that these authorities are inapplicable because GBMC relies on *Mayor & City Council of Baltimore v. Boitnott,* 356 Md. 605, 741 A.2d 1079 (1999), which the Supervisor asserts "arises in the same context" concerning the lease of government property. *Boitnott,* however, is not premised solely on T.P. § 6–102(e) and the lease of government property. *See id.* at 621–22, 741 A.2d 1079. Instead, *Boitnott* addresses generally what is considered "ownership" for real property tax purposes, and concludes, as explained above, that record title ownership is required. *See id.* at 617, 619, 741 A.2d 1079.

**10.** We recognize that these opinions are not binding on the Supervisor.

partnership ("Partnership") for a term of 40 years and sell the garage to the partnership under a conditional sales contract, with the purchase price paid over a 30–year period. Simultaneously with the lease and sale by JHH, the Partnership would lease back the land and garage to JHH for a term of 30 years.[11]

Bushel opined that "entry into the proposed transaction by JHH will not result in a change of ownership of the property for tax purposes." She observed that the lease of the land underlying the garage did "not alter the status of JHH as owner for tax purposes." Because the deed transferring title to the garage was not recorded, Bushel determined that legal title to the garage would not pass until the end of the 30–year period. Therefore, Bushel concluded that the "legal title to the improvements which are subject to the conditional sales contract also remains in JHH for 30 years."

Similarly, in the 1983 opinion, the Westminster Preservation Trust, Inc., a Maryland non-profit corporation ("the Corporation"), proposed to lease land owned by it to Old Western Partnership (the "Partnership") for a 50–year term and sell the improvements thereon to the Partnership under a conditional sales contract, with the purchase price paid over a 35–year period. The deed conveying title to the improvements would not be delivered to the Partnership until payment of the final installment of the purchase price. During the initial 35 years, the land and improvements would be leased back to the Corporation. Thus the Corporation would "retain possession and record ownership of the land and improvements for a 35–year period." [12]

---

**11.** From the 30th to the 40th year, the Partnership would hold legal and equitable title to the garage and be the lessee in possession of the land. At the end of 40 years, the land and garage would revert to JHH under the terms of the ground lease.

**12.** From years 36–50, the Partnership would hold record title to the improvements and be in possession of the land under the ground lease. At the end of 50 years, possession of the land and title to the improvements would revert to the Corporation.

Bushel again opined that "the subject transaction does not result in a change of ownership for tax purposes . . . for the first 35 years of the transaction." She reasoned that the 50–year non-renewable ground lease would not change the ownership of the land, and "[u]ntil such time as the legal title to the improvements is transferred to the [P]artnership at the end of 35 years, the [C]orporation remains [the] owner for tax purposes." In sum, Bushel concluded in each instance that, because no deed transferring title to the improvements from the exempt organization to the third party had been recorded, the exempt organization retained ownership of the improvements for real property tax purposes.

### Exception to Record Ownership

■ In the alternative, the Supervisor argues that BHI LLC falls under an "exception[ ] to [the] general practice" that SDAT "generally relies on land records to establish ownership." Specifically, the Supervisor contends that, under T.P. § 6–102(d)(3), because BHI LLC is a grantor under the Leasehold Deed of Trust, then BHI LLC, and not GBMC, is " 'subject to property tax' as though [BHI LLC] is the 'owner of the property.' " We disagree and explain.

In general, a leasehold or other limited interest in property is not subject to property tax. T.P. § 6–102(a). The Maryland Code, however, contemplates several exceptions to the general rule that only the record title owner of the property may be taxed. T.P. § 6–102. T.P. § 6–102(d)(3) sets forth one such exception:

(d) *Other interests in real property.*—The following interests in real property are subject to property tax as though the person in possession or the user of the property were the owner of the property:

(3) an interest of a mortgagor or grantor under a deed of trust.

■ A deed of trust is a "security device," which "transfers legal title from a property owner to one or more trustees to be held for the benefit of a beneficiary." *Springhill Lake Inves-*

*tors Ltd. P'ship v. Prince George's County,* 114 Md.App. 420, 428, 690 A.2d 535 (1997). In other words, through the transfer of legal title, "the deed of trust secures repayment of the loan" and "[i]f the loan is not repaid, it is through the deed of trust that the beneficiary has recourse against the property[,] ... by selling the borrower's property and applying the funds received against the borrower's indebtedness." *Id.*

In the case *sub judice,* as explained above, BHI LLC never held record title to the Improvements, and therefore, could not have transferred the *legal title* to the Improvements as a grantor would under a deed of trust. Instead, notwithstanding the language in the Leasehold Deed of Trust, BHI LLC conveyed only a *leasehold interest* in the Improvements to the trustees. This is not the type of conveyance contemplated by T.P. § 6–102(d)(3).

Furthermore, prior to entering the Leasehold Deed of Trust, BHI LLC and GBMC agreed in the Improvements Lease that: (1) BHI LLC would lease back all of its "right, title and interest" in the land and the Improvements to GBMC; (2) GBMC may "at all times peaceably and quietly have, hold and enjoy the [land and the Improvements] during the Term of this Lease free from any claim by, through, or under [BHI LLC];" and (3) GBMC was the only party who had "possession" of the land and Improvements. BHI LLC, therefore, is neither "the person in possession ... of the property," nor is the "user of the property," as required by T.P. § 6–102(d)(3).

In sum, BHI LLC does not fit under the exception set forth in T.P. § 6–102(d)(3) because (1) BHI LLC never held record title to the land or Improvements; (2) BHI LLC transferred only a leasehold interest to the trustees under the Leasehold Deed of Trust, and not a title interest; and (3) BHI LLC is neither a person in possession of the land or Improvements, nor the user of such property.

Accordingly, the Tax Court did not err in determining that GBMC was the owner of the Improvements according to the land records, and thus is entitled to seek a charitable exemp-

tion for the land and Improvements. This result is in accord with the rationale behind taxing the record title owner of the real property, as stated by the Court of Appeals:

> [T]he rule that, for purposes of assessment, owner means legal title is commended by its utility, simplicity, and universality; and so makes for the certain and prompt collection of taxes on real property. Simplicity is lost when inquiry must be made into the number of incidents of ownership that the legal title holder has retained.... [T]ax assessors are but ill qualified to exempt real property according to equitable interests; and the valuation and assessment of land are an administrative function which a sound public policy would reduce to its simplest form.

*Boitnott,* 356 Md. at 619, 741 A.2d 1079 (citations and quotations omitted).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; APPELLANT TO PAY COSTS.**