79 A.3d 960

## TOWNSEND BALTIMORE GARAGE, LLC, et al.

v.

## SUPERVISOR OF ASSESSMENTS OF BALTIMORE CITY.

### No. 2922, Sept. Term 2009.

Court of Special Appeals of Maryland.

Nov. 19, 2013.

Christopher B. Lord (Emily Daneker, Whiteford, Taylor & Preston LLP, on the brief); T. Scott Basik, Baltimore, MD, for appellant.

William K. Hammond (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: MEREDITH, KEHOE, LAWRENCE F. RODOWSKY (Retired, specially assigned), JJ.

MEREDITH, J.

This case arises out of a property tax assessment levied by the Supervisor of Assessments of Baltimore City ("the Supervisor"), appellee, upon certain improvements constructed upon real property owned by the State of Maryland. Although real estate owned by the State would ordinarily be exempt from property taxes, the Supervisor asserts that the present property does not qualify for an exemption because the improvements, which were constructed upon the State-owned property pursuant to a series of complex leasing arrangements, are owned and operated in connection with businesses that are conducted for profit by the appellants, Townsend Baltimore Garage, LLC ("Townsend"), and Baltimore LSRP One Business Trust ("BLSRP"). After the Tax Court agreed with the Supervisor's denial of a tax exemption, Townsend and BLSRP filed a petition for judicial review in the Circuit Court for Baltimore City. The circuit court affirmed the decision of the Tax Court, and this appeal followed.[1]

---

1. Appellants presented the following questions:
    1. Is the property subject to exemption from real property taxes under Md. Code Ann., Tax–Prop. Art. § 7–210, because the real property at issue is owned in fee by the State of Maryland and is used by UMB for its educational purposes?

For the reasons stated herein, we conclude that the Tax Court's ruling was in error. Accordingly, we reverse the judgment of the circuit court.

## BACKGROUND

The parties agree that the underlying facts are largely undisputed. The facts were well-summarized as follows by the Circuit Court for Baltimore City:

This case involves two parcels of land within the University of Maryland BioPark in Baltimore City. Both are owned in fee by the State of Maryland for the use of the University System of Maryland. The parcels were conveyed to the State by the City of Baltimore for nominal consideration. The State leased the land to UMB Health Sciences Research Park Corporation under a ground lease. UMB Health Sciences Research Park Corporation (RPC) is a non-profit corporation that enjoys tax exempt status under Internal Revenue Code § 501(c)(3) and was created under Education Article § 12–113, which permits the University system to establish a business entity to further a goal of the University related to its mission. The term of the ground lease is 60 years and 2 days. The ground lease provides that during the term of the lease the improvements upon the land shall be deemed to be owned by RPC. It further provides that upon the expiration of the lease term the title to the improvements shall automatically vest in the landlord without any payment by the landlord.

One of the parcels was subleased by RPC to Baltimore LSRP One Business Trust, a for-profit entity, for a period

---

2. Alternatively, is the property subject to exemption from real property taxes under Tax–Prop. Art. § 7–202, as property used for educational purposes?
3. Is the property subject to exemption from real property taxes under the Maryland Declaration of Rights' uniformity requirement, in light of the *Sinai* case and the *GBMC* case?
4. Is the land subject to exemption from taxation, even if the improvements on the land are not?

Because we answer the first question in the affirmative, we will not address the other questions.

of 60 years and 1 day. The subtenant agreed to finance and construct an office and laboratory building on the land. The sublease provides that during the term of the sublease title to the improvements shall be held by the subtenant. It further provides that upon the expiration of the sublease term the sublandlord shall be the owner of the improvements free from any interest of the subtenant. The subtenant, in turn, subleased these premises to the State of Maryland for the use of UMB. UMB uses the premises to house programs of the School of Medicine. The parties stipulated that 85% of the office space is used for University purposes.[2]

The other parcel was subleased by RPC to Townsend Baltimore Garage, LLC, a for-profit entity, for a term ending in 2064. The subtenant agreed to finance and construct a parking garage on the land. The sublease provides that during the term of the sublease title to the improvements shall be held by the subtenant. It further provides that upon the expiration of the sublease term the sublandlord shall be the owner of the improvements free from any interest of the subtenant. The subtenant licensed 150 parking spaces to the State of Maryland for the use of UMB. The parties stipulated that 25% of the garage is used for University purposes.

According to testimony before the Tax Court, the transaction was structured in this fashion in order to finance the

---

**2.** Appellants did not contest the assessment of the portion of their leasehold interests that are not being used for University purposes. They sought an exemption only for the stipulated percentages of the office space and parking garage that the parties agreed were used for University purposes, and, in this appeal, appellants do not claim that the portion of the property that is not used for University purposes is exempt. *Cf. Cordish v. Supervisor of Assessments*, 427 Md. 1, 9, 45 A.3d 273 (2012) (Under TP § 6–102(e), a lessee's interest in property leased from the State is taxable if the property is "made available to the lessee" for use "in connection with a business that is conducted for profit." Unlike the lessee's use of city-owned land for a casino in *Cordish*, appellants' lease of the portions of the property that are the subject of this appeal was conditioned upon and restricted to use by the State for University purposes.).

development of the property. Because of the limited debt capacity of the University, it was necessary to bring in private developers to finance the construction of the buildings. The developers insisted on having ownership of the buildings during the period of the leases because that was necessary in order for them to depreciate the improvements for income tax purposes. That in turn benefitted the University by reducing its rental rate.

The Tax Court did not render written findings of fact, but did provide the following comments in an oral opinion delivered at the conclusion of the hearing in the Tax Court:

The only real issue seems to have been the legal ownership or the ramifications thereof of the buildings.

Important facts: The land in question was owned by the City of Baltimore at one time, was transferred to the State of Maryland for the University of Maryland to a 501(c)(3), not owned by a private entity—well, the 501(c)(3) is a private entity—not owned by a for-profit entity. At least in terms of my analysis, I'm not sure that it matters that it's a 501(c)(3) or the University of Maryland at Baltimore. In either instance, it's a government entity.

And to the extent of the percentages that were agreed to, that a portion of the office building and the garage, twenty-five percent of the garage and eighty-five percent of the office building, were used for public purposes for the University. That there is no doubt that the University, acting through this 501(c)(3), which, if I remember correctly is RPC, entered into an agreement with a private entity, a for-profit organization, to construct an office building and a parking garage. And to the agreed percentages, were leased back to the University for University purposes.

So much for most of the agreed facts that I think are the easy part.

The next part is a little harder. We had to—Who owned these structures? Petitioner basically said that, yes, we entered into a whole stack of agreements that said that the structures were owned by the for-profit entity. I hate to

put it this way since, Petitioner, I understand it also includes the University. Am I correct? Documents say that the for-profit entity owns the buildings, but they're arguing today that, in fact, that that's not true. That it was only done for income tax purposes to allow the for-profit to depreciate the building. In fact, these are fixtures and are really owned by the 501(c)(3) because common law says a fixture is owned by whoever owns the land, and we know who owns the land.

It's an argument I'm not going to buy. That if the documents say that it's owned by the for-profit entity, then I'm going to say it's owned by the for-profit entity. And there are—Given the long-term nature of these agreements, its ownership has different meanings in some ways. Clearly, if this was a very short-term lease, that it wouldn't— most of the characteristics of ownership would not— wouldn't apply. But given that these are approximately sixty year leases, and the documents themselves say that the structures are owned by the for-profit, I'm going to say that they're owned by the for-profit. There are a number of instances where government owned land is used by or for a for-profit entity and, there, becomes a taxable event.

\* \* \*

At any rate, the Petitioner also wants a different tax treatment for the land from the buildings, and I'm not sure I'm willing to do that. Typically, we don't divide up the two. Whatever the treatment is for the property, it will be the same for both parts.

So what I am going to rule is that this property is subject to property taxation. It is a general principle that to doubt an exemption is to deny it. That I certainly have some doubts about this one. Though I have to deny it, it's not as clear-cut as most—well, as many cases are. The fact—well, I'll get the name—[a witness who testified on behalf of UMB] basically said that the reason that they entered into this agreement was because the University did not have the financing, the ability to add additional debt onto it in order to build the building for themselves. So in some respects

this was—this whole regime was created as another way to finance the buildings that they wanted constructed. In terms of the final results, that's somewhat unfortunate. It would have been so much easier if they had built the buildings themselves and owned the buildings as well as the land, but that's not what happened.

And, anyway, it's not just a formality that they entered into all these agreements. There is some substance in my mind to this whole arrangement. That the entities that were created to build the buildings and own them is a real entity, a for-profit entity, and I think that's significant in the outcome.

## DISCUSSION

The applicable standard of review was summarized by the Court of Appeals as follows in *M.D. Economic Dev. Corp. v. Montgomery Co.*, 431 Md. 189, 198, 64 A.3d 478 (2013):

> The Maryland Tax Court is an administrative agency, and thus, it "is subject to the same standards of judicial review as other administrative agencies." *Frey v. Comptroller of the Treasury*, 422 Md. 111, 136, 29 A.3d 475, 489 (2011); *see also Colonial Pipeline Co. v. State Dep't of Assessments & Taxation*, 371 Md. 16, 40 n. 15, 806 A.2d 648, 655 n. 15 (2002). In this regard, the standard of review "depends on whether the court is reviewing a question of law, question of fact, or a mixed question of law and fact." *Prince George's Cnty. v. Brown*, 334 Md. 650, 658, 640 A.2d 1142, 1146 (1994). In this case, we are "under no statutory constraints in reversing a Tax Court order which is premised solely upon an erroneous conclusion of law." *Read v. Supervisor of Assessments*, 354 Md. 383, 392, 731 A.2d 868, 872 (1999).

To similar effect, we observed in *Supervisor of Assessments of Baltimore County v. Greater Baltimore Medical Center*, 202 Md.App. 282, 291–92, 32 A.3d 174 (2011) (hereinafter cited as "*GBMC* "):

> As an administrative agency, the Tax Court's decisions are reviewed under the "same appellate standards generally

applied to agency decisions." *Comptroller of the Treasury v. Johns Hopkins Univ.*, 186 Md.App. 169, 181, 973 A.2d 256 (2009). As this Court set forth in *Comptroller of the Treasury v. Johns Hopkins Univ.*:

> We review the decision of the Tax Court, not the ruling of the circuit court on judicial review. The Tax Court's factual findings are reviewed for substantial evidence in the record. Under the substantial evidence test, a factual finding must be upheld if it is such that a reasoning mind reasonably could have found it from the agency record (here, the evidence before the Tax Court). Even if the Tax Court does not state the reasons for its decision, reversal is not required if the record discloses substantial evidence supporting the decision.
>
> Likewise, we review the Tax Court's mixed findings of fact and law for substantial evidence in the agency record. Determinations involving mixed questions of fact and law must be affirmed if, after deferring to the Tax Court's expertise and to the presumption that the decision is correct, a reasoning mind could have reached the Tax Court's conclusion. We are not so constrained in our review of the Tax Court's decisions of law. Ordinarily, that review is *de novo*. Yet, even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.

*Id.* at 181–82, 973 A.2d 256 (citations and quotations omitted).

In this case we are reviewing a claim for exemption from real property taxes on property as to which the fee simple interest is undisputedly owned by the State. Property owned by the State is, in most cases, exempt from property taxation pursuant to Maryland Code (1985, 2012 Repl. Vol.), Tax Property Article ("TP"), § 7–210, which provides:

(a) *In general.*—Except as otherwise provided in § 6–102 of this article and except as otherwise provided under this section, government-owned property is not subject to property tax, if the property:

(1) is devoted to a governmental use or purpose; and

(2) is owned by:

(i) the federal government;

(ii) the State;

(iii) a county or a municipal corporation; or

(iv) an agency or instrumentality of the federal government, the State, a county, or of a municipal corporation.

(b) *Limitation on agency or instrumentality ownership.*—The exemption provided for the property owned by an agency or instrumentality in subsection (a)(2)(iv) of this section applies only to the extent that a law exempts the property.

Section 7–210(a) refers to exceptions "provided in [TP] § 6–102," which is a statute that addresses taxation of leasehold interests. Section 6–102 provides that, as a general matter, unless otherwise provided in that section, "a leasehold or other limited interest in property is not subject to property tax." TP § 6–102(a). Section 6–102 identifies two pertinent exceptions to the general proposition that a leasehold interest is not taxable:

(a) *In general*—Except as otherwise provided in this section, a leasehold or other limited interest in property is not subject to property tax.

\* \* \*

(d) *Other interests in real property*—The following interests in real property are subject to property tax as though the person in possession or the user of the property were the owner of the property:

(1) an interest of a tenant under a 99–year lease, whether or not the lease is renewable;

(2) an interest of a tenant under a lease for less than 99 years, if the lease is perpetually renewable; and

(3) an interest of a mortgagor or grantor under a deed of trust.

(e) *Interests in government property*—Unless exempted under § 7–211, § 7–211.1, § 7–244, or § 7–501 of this article, the interest or privilege of a person in property that is owned by the federal government, the State, a county, a municipal corporation, or an agency or instrumentality of the federal government, the State, a county, or a municipal corporation is subject to property tax as though the lessee or the user of the property were the owner of the property, if the property is leased or otherwise made available to that person:

(1) by the federal government, the State, a county, a municipal corporation, or an agency or instrumentality of the federal government, the State, a county, or a municipal corporation; and

(2) with the privilege to use the property in connection with a business that is conducted for profit.

Although TP § 6–102(d)(1) and (2) identify certain long-term leases under which the tenant's leasehold interest will be treated as taxable ownership, it is clear that neither of the leases that were the focus of the current appeal would be taxable under these subsections. Both leases were for less than 99 years, and were not perpetually renewable.

■ The Supervisor asserts, however, that the leasehold interests of the appellants are within the scope of taxable interests covered by TP § 6–102(e)(2) because, although the State owns the underlying land, the land is subleased to Townsend and BLSRP for use in connection with businesses that are conducted for profit. We observe, however, that this does not appear to have been the rationale for the Tax Court's ruling. Nor is it at all clear that the assertion withstands scrutiny.

Although Townsend and BLSRP are both sublessees of the respective parcels, they are also lessors of the improved property, and the lessee under each of the subject agreements is the State of Maryland, for the use of the University System of Maryland on behalf of its constituent institution, University

of Maryland, Baltimore [3] And the parties stipulated that the portions of the office building and parking garage that are the subject of the respective leases at issue in this appeal *are* being used for University purposes.

██ But the Tax Court's decision was not based upon TP § 6–102(e); instead, the Tax Court concluded as a matter of law that the appellants were the *owners* of the improvements the appellants constructed upon the State's land. Although the appellants are treated as "owners" for some purposes in the leasing documents, our holding in *GBMC* makes it clear that it was error for the Supervisor to treat the appellants as the owners for property tax purposes.

In *GBMC*, the question was whether the charitable exemption under TP § 7–202(b) that inured to the benefit of the record title owner of the underlying real property also provided an exemption for improvements that had been constructed upon that land pursuant to ground lease financing arrangements similar to those employed by UMB in the present case. In affirming the Tax Court's conclusion that GBMC, as the record owner of the land and improvements, remained eligible for the charitable exemption of the improvements, this Court noted that "[i]t is clear that, under Maryland law, **the record owner, as listed in the land records, is the owner of real property for tax assessment purposes.**" 202 Md.App. at 292, 32 A.3d 174 (emphasis added). We further noted that ownership of the improvements generally follows title to the land, and RP § 3–101 requires that all transfers in record ownership of property be recorded. *Id.* at 293, 32 A.3d 174. Consequently, we concluded that GBMC was the *record owner* of both the land *and* improvements. We explained in *GBMC, id.* at 292–93, 32 A.3d 174:

---

**3.** We note that the lease of the office space from BLSRP to the State includes a provision that would obligate the State, as tenant, to pay as additional rent an amount "equal to the Taxes assessed by the relevant taxing authority with respect to the Premises and payable by the Landlord...." Consequently, if the Tax Court's ruling is upheld, the Supervisor's assessment would create the anomalous situation in which the State will be obligated to pay increased rent in an amount equal to its assessed taxes.

All real property located in Maryland is taxable to the owner of the real property by the SDAT. T.P. § 6–101(a)(1). It is clear that, under Maryland law, the record owner, as listed in the land records, is the owner of real property for tax assessments purposes. *Mayor & City Council of Baltimore v. Boitnott,* 356 Md. 605, 617, 619, 741 A.2d 1079 (1999); *Johns Hopkins Univ. v. Bd. of County Comm'rs of Montgomery County,* 185 Md. 614, 617, 45 A.2d 747 (1946). Under T.P. § 1–101(dd)(1), real property is defined as "any land or improvements to land." *See also* Black's Law Dictionary 1218 (6th ed. 1990) (defining "real property" as "[l]and, and generally whatever is erected or growing upon or affixed to land."). Improvements are "such things as are placed thereon by the way of betterments which are of a permanent nature and which add to the value of the property as real property ... includ[ing] buildings and structures of every kind." *Allentown Plaza Assocs. v. Suburban Propane Gas Corp.,* 43 Md.App. 337, 346, 405 A.2d 326 (1979) (quotations omitted). Consequently, improvements affixed to the land are "considered part of the real property," and "ownership of the improvements follows title to the land." 41 Am.Jur.2d Improvements § 3 (2005). *See also Allentown Plaza Assocs.,* 43 Md.App. at 345 n. 9, 405 A.2d 326 ("Things of a personal nature or buildings or other structures upon the land, which have been so fixed to land as to become a part thereof ... pass with the land....") (quotations omitted). Thus, **subject to express statutory exceptions that are not applicable in the instant case, the owner of real property according to the land records also owns the improvements built thereon. It follows then that, for someone other than the record landowner to own the improvements on the land, there must be a recorded deed or other instrument of record showing a transfer of the title to the improvements to another owner.** *See* Md.Code (1974, 2010 Repl. Vol.), § 3–101 of the Real Property Article ("R.P.").

(Emphasis added; footnotes omitted.)

In *GBMC,* the tax supervisor argued—as the Supervisor does in the present case—that the various lease documents

the parties had executed to facilitate the financing and construction of the improvements referred to the for-profit entity as the owner of the improvements. But there was no document of record that transferred record title in the improvements from the owner of the fee simple interest in the land to the for-profit entity. Consequently, we held: "GBMC is the owner of the land and the Improvements for real property tax purposes." *Id.* at 300, 32 A.3d 174. We explained, *id.:*

> The unrecorded documents relied upon by the Supervisor do not compel a different conclusion. R.P. § 3–101 requires all transfers in property ownership to be recorded. Consequently, none of the unrecorded documents can effect a transfer of the record ownership of the land or the Improvements from GBMC to BHI LLC [the for-profit entity that financed and constructed the improvements]. These documents, at most, show a *contractual* ownership of the Improvements by BHI LLC; they do not show title or record ownership of the Improvements by BHI LLC. In other words, record title always remained in GBMC, even if contractual ownership of the Improvements was held by BHI LLC.

In the present case, appellants are in the same position as that occupied by the for-profit entity (BHI LLC) in *GBMC.* The sole distinction is that the underlying land was exempt from property tax in *GBMC* because it was owned by a charitable organization, whereas the underlying land is exempt in the present case because it is owned by the State. Consistent with our holding in *GBMC, id.* at 300, 32 A.3d 174 we hold that, for real property tax purposes, the State is the owner of the land and the improvements. The stipulated percentage of those improvements that are used for University purposes remains exempt from real property taxes.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS REVERSED. CASE REMANDED WITH INSTRUCTIONS TO REVERSE THE RULING OF THE TAX COURT. COSTS TO BE PAID BY APPELLEE.**