*901, LLC v. Supervisor of Assessments of Baltimore City*
No. 0491, Sept. Term. 2023
Opinion by Leahy, J.

**Taxation > Property Taxes > Exemptions > In General > Transfer of exemption or of property exempt**

Section 7-210(a) of Maryland Code (1985, 2019 Repl. Vol., 2023 Supp.), Tax-Property Article ("TP"), sets forth the general rule that property owned by the government is not subject to property tax if the property is "devoted to a governmental use or purpose[.]" TP § 7-210(a)(1). However, TP § 7-210(a) expressly instructs that TP § 6-102 contains exceptions to this general rule, including TP § 6-102(e), which provides that "the interest or privilege of a person in property that is owned" by the government "is subject to property tax as though the lessee or the user were the owner of the property, if the property is leased or otherwise made available to that person" by the government "with the privilege to use the property in connection with a business that is conducted for profit." TP § 6-102(e). Accordingly, in the instant case, the appellant/lessee of government property was subject to real property taxation under TP § 6-102(e) where the lessee had the ability to use the leased property in connection with its for-profit business of subleasing/licensing the property to a variety of governmental, non-profit, for-profit, residential, and other end-users of the property. The fact that certain governmental subtenants used portions of the property for governmental uses or purposes within the meaning of TP § 7-210(a)(1) did not alter this result, because the application of TP § 7-210(a) is expressly subject to the provisions of TP § 6-102.

Circuit Court for Baltimore City

Case No. 24-C-21-000219

901, LLC

v.

SUPERVISOR OF ASSESSMENTS OF
BALTIMORE CITY

Arthur,
Leahy,
Shaw,

JJ.

Opinion by Leahy, J.

Filed: April 3, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Appellant, 901, LLC, claims that the Supervisor of Assessments of Baltimore City (the "Supervisor" or "Appellee") erred in denying its applications, filed in 2017, for partial exemptions from property tax on real property that it has leased from the Maryland Transit Administration ("MTA"). The real property at issue—which is located across the street from the Joseph Meyerhoff Symphony Hall—includes 1010, 1030, and 1040 Park Avenue in Baltimore City, Maryland; throughout this opinion, we refer to these properties collectively as the "Property." The Property is the product of a series of agreements between the MTA and Appellant's predecessor-in-interest, Symphony Center, LLC ("Symphony Center"), to finance and construct the Property, and thereafter permit Symphony Center (and Appellant) to sublease/license the Property as part of a for-profit business.

Appellant contends that it is entitled to partial exemptions from tax under Maryland Code (1985, 2019 Repl. Vol., 2023 Supp.), Tax-Property Article ("TP"), § 7-210(a),[1] because a government entity is the record owner of the Property and portions of the Property are used by various governmental subtenants for qualifying governmental uses or

_____

[1] Unless otherwise indicated, citations to the Tax-Property Article are to the current Code. While several substantive changes have been made to the applicable statutes since the date of finality in this case—January 1, 2017—these changes do not affect the outcome of this case. We will point out substantive changes when citing to the statutes.

The Tax-Property Article defines "[d]ate of finality" as "January 1, when assessments become final for the taxable year next following." TP § 1-101(i). The term "[a]ssessment[,]" as pertains to real property, is defined as "the phased-in full cash value or use value to which the property tax rate may be applied[.]" *Id.* § 1-101(c)(1). Under TP § 7-102, "[u]nless otherwise provided in the law establishing the exemption, when any property is exempted by law from property tax, the exemption is effective on the next date of finality after the effective date of the law." *Id.* § 7-102.

purposes. The Supervisor denied Appellant's applications, however, because the provisions of TP § 7-210(a) are expressly made subject to TP § 6-102, which provides, in subsection (e), that a lessee or user of government property is subject to property tax as if the lessee or user were the owner of the property if, among other things, the property is "leased or otherwise made available" to the lessee or user with the "privilege to use the property in connection with a business that is conducted for profit." TP § 6-102(e). Because Appellant's for-profit business involves subletting the leased Property to a variety of subtenants, the Supervisor determined that Appellant satisfied the conditions of TP § 6-102(e) and, accordingly, that Appellant's request for exemption under TP § 7-210(a) would have to be denied.

Appellant, however, maintains that because some of its subtenants are governmental entities, those portions of the Property are used for a qualifying governmental use or purpose under TP § 7-210(a)(1). Further, Appellant asserts that it does not have the "privilege to use" the Property under TP § 6-102(e)(2) because its subtenants are the end-users of the Property; in other words, Appellant argues that an intermediate use of real property, i.e., the business of leasing units of property to so-called end-users of the property, does not qualify as "use" of property under TP § 6-102(e)(2).

The Maryland Tax Court relied on TP § 6-102(e) to affirm the decision of the Supervisor, and the Circuit Court for Baltimore City affirmed the decision of the Tax Court. Appellant presents two questions for our review:

I. "Did the Tax Court err in denying partial exemptions from real property tax for the Property, which is owned and used by tax-exempt organizations?"

2

II.    "Did the Tax Court violate the doctrine of *stare decisis*, principles of statutory construction, and public policy in denying partial exemptions from real property tax for the Property?"

We consider both questions together because they concern the same fundamental issue—whether the Tax Court correctly determined that Appellant's "privilege to use the property in connection with a business that is conducted for profit" makes Appellant "subject to property tax as though" Appellant was the owner of the Property for tax purposes by operation of TP § 6-102(e).  As explained below, we hold that the Tax Court correctly determined that partial property tax exemptions under TP § 7-210(a) were unavailable to Appellant because, under TP § 6-102(e), Appellant is a lessee of qualifying government property with the privilege to use the property in connection with a business that is conducted for profit.[2]

## BACKGROUND

The underlying facts of this case are largely undisputed.  As summarized by the Circuit Court for Baltimore City:

> The parties stipulated to the relevant facts in their Joint Stipulation of Facts submitted to the Tax Court.  The Property at issue is located in midtown Baltimore adjacent to the MTA's Cultural Center/State Center Light Rail Station and near the Joseph Meyerhoff Symphony Hall.  According to the Baltimore City Land Records, the Property is owned by the MTA, an agency of the Maryland Department of Transportation.  The MTA proposed a "transit-oriented mixed use redevelopment of the [P]roperty."  The MTA selected Symphony Center . . . to develop the Property following a

---

[2] The Tax Court also considered, and rejected, Appellant's contention that TP § 7-202(b) exempts portions of the Property subleased to non-profit entities from property tax. On appeal to this Court, Appellant's brief does not appear to advance any argument that an exemption is available under TP § 7-202(b).  Accordingly, we focus our attention on the Tax Court's determination that, due to the operation of TP § 6-102(e), Appellant is not entitled to a partial exemption from property tax under TP § 7-210(a).

competitive bidding process.  The MTA leased the Property to the Symphony Center on June 8, 2000, for a term of 91 years.

The MTA approved Symphony Center's Master Site Plan for the Property.  The Master Site Plan includes four buildings: two office buildings at 1010 and 1040 Park Avenue, a parking garage at 1030 Park Avenue, and an apartment building at 1020 Park Avenue (collectively the "Improvements").  [901, LLC] does not claim a property tax exemption for any part of the apartment building.  The MTA provided Symphony Center a $6.8 million grant "[i]n consideration of the various obligations undertaken" in constructing the parking garage.  Pursuant to the Grant Agreement, Symphony Center is required to provide at least sixty parking spaces for "the tenants and occupants of governmental and commercial office buildings" on the Property.

On October 24, 2000, [901, LLC] was formed by Symphony Center to develop the Property.  [901, LLC] is a for-profit entity.  On June 7, 2001, Symphony Center assigned the Ground Lease to [901, LLC].  [901, LLC] "expressly agree[d] to assume all of the obligations of [Symphony Center] under the Ground Lease and under all contracts, including the Grant Agreement.  The assignment was made to "facilitate the development of the" Property.  "[901, LLC] constructed [the] [I]mprovements on the Property."

On January 28, 2004, the MTA and [901, LLC] amended the Ground Lease.  Before amending the Ground Lease, [901, LLC] could "sell, assign, transfer or convey, sublet or license the Property, or any part thereof" without the MTA's prior written consent.  [901, LLC] did need to provide the MTA prior written notice if [901, LLC] took any of these actions.  Pursuant to the Amendment, "[901, LLC] may not subdivide the [Property], or sell, assign, transfer or convey, sublet or license the [Property], or any part thereof" without the MTA's prior written consent, but [901, LLC] "can sublet or license retail spaces and office spaces within the Improvements" without the MTA's consent or providing the MTA prior written notice.  [901, LLC] subleases the Property to various for-profit, non-profit, and governmental subtenants.  Upon the expiration of the Ground Lease, [901, LLC] will yield the Property to the MTA and have no right in or to the Property, including the Improvements.

*901, LLC v. Supervisor of Assessments of Balt. City*, No. 24-C-21-000219, slip op. at 2-4

(Balt. City Cir. Ct. Apr. 14, 2023) (first, third, eighth, tenth, eleventh, seventeenth, and

eighteenth alterations supplied by the circuit court) (citations and footnote omitted).

Appellant filed three applications for exemption for the Property (the

4

"Applications") on May 25, 2017. Collectively, the Applications sought "an exemption of 85.45% [for 1010 Park Avenue] because of the rentals to government agencies"; "an exemption of 39.97% [for 1040 Park Avenue] because of the rentals to the State and non-profit organizations"; and "an exemption of 55.85% [for 1030 Park Avenue] because of the lease of parking spaces in the garage to government and non-profit organizations."  In their joint stipulation of facts before the Maryland Tax Court, the parties agreed that as of January 1, 2017, 85.45% of the leasable space at 1010 Park Avenue was leased to "Governmental Subtenants and the Non-Profit Subtenants";[3] as was 39.97% of the leasable space at 1040 Park Avenue.  Meanwhile, 57.89% of the total parking spaces at 1030 Park Avenue[4] was "reserved for either" governmental or non-profit subtenants "that have offices in 1010 Park Avenue and 1040 Park Avenue or the [t]he University of Maryland Medical Center."

Appellee, the Supervisor of Assessments of Baltimore City, denied the Applications in November 2017.  The Property Tax Assessment Board ("PTAB") for Baltimore City affirmed in December 2018, and Appellant appealed to the Tax Court.[5]

The Tax Court affirmed the ruling of the PTAB on December 28, 2020, in an

---

[3] The joint stipulation does not explain why it adds a reference to non-profit tenants where the application for 1010 Park Avenue mentions only "government agencies."

[4] As previously noted, the MTA provided Appellant's predecessor in interest, Symphony Center, a $6.8 million grant towards the construction of the parking garage, in consideration for the various obligations imposed by the grant agreement.

[5] The Supreme Court of Maryland described the nature of the Tax Court in *Comptroller of Maryland v. FC-GEN Operations Investments LLC*:

(Footnote Continued)

amended memorandum and order, thus denying Appellant's Applications.  In the amended memorandum, the Tax Court acknowledged that Appellant "relies on TP §§ 7-202 and 7-210 to justify the exemption[s] it seeks" as those sections "exempt from property tax property titled to a non-profit or government, which is used for non-profit or government purposes, respectively."  However, the Tax Court declared that "adherence to the plain meaning of TP § 6-102(e) mandates a denial of" the Applications for exemptions for the government subleases, emphasizing that TP § 7-210 "specifically references TP § 6-102(e)[.]"  Under  TP § 6-102(e), the Tax Court explained, property tax is imposed on certain "lessee[s] or . . . user[s]" of government-owned property by deeming those entities the hypothetical owners of the property for tax purposes, "[u]nless exempted" by enumerated sections of the Code.  The Tax Court clarified that the enumeration of specific exemptions under TP § 6-102(e) "mandates rejection of non-enumerated exemptions[,]"

---

"Despite its name, the Tax Court is not a court; instead, it is an adjudicatory administrative agency in the executive branch of state government." *Furnitureland S., Inc. v. Comptroller*, 364 Md. 126, 137 n.8, 771 A.2d 1061 (2001); *see also* [Maryland Code (1988, 2010 Repl. Vol.), Tax-General Article ("TG"),] § 3-102.  The Tax Court is created by statute.  It consists of five judges who have jurisdiction to hear appeals of the final decisions relating to tax issues.  TG § 3-103(a).  Matters within the Tax Court's jurisdiction include: "(1) the valuation, assessment, or classification of property; (2) the imposition of a tax; (3) the determination of a claim for refund; (4) the application for an abatement, reduction, or revision of any assessment or tax; or (5) the application for an exemption from any assessment or tax."  TG § 3-103.  The Maryland Tax Court hears appeals from the final decisions of the State or local taxing authorities, including decisions of the Comptroller, property-tax assessment appeals boards, and local tax collectors.  TG §§ 3-103, 13-510, Md. Code Ann., Tax Prop. § 14-512 (2019 Repl. Vol., 2022 Supp.).

482 Md. 343, 365-66 (2022) (footnote omitted).

6

and noted, "there is no exemption specified for sub-lessees using the property for government or non-profit purposes[.]" Appellant's reliance on TP § 7-202(b) for the subleases to non-profit entities was "further flawed," the Tax Court explained, because TP § 7-202(b) "conditions that exemption on the non-profit owning the property" rather than a government entity.[6] Accordingly, the Tax Court concluded that Appellant's arguments fail under the plain meaning of the statutes.[7]

The Tax Court highlighted the Supreme Court of Maryland's decision in *Cordish Power Plant Limited Partnership v. Supervisor of Assessments for Baltimore City*, 427 Md. 1 (2012), in which the Court asserted that TP § 6-102(e) identifies hypothetical owners for tax purposes "for the convenience of the tax collector[.]" *Cordish*, 427 Md. at 12. The Tax Court found that it would be "inconsistent" with the purpose of TP § 6-102(e) to

---

[6] Appellant had argued that, because portions of the Property are subleased/licensed to non-profit organizations, the conditions of TP § 7-202(b) had been satisfied to provide Appellant tax exemptions. Specifically, TP § 7-202(b) provides a property tax exemption if two conditions are satisfied. First, the property must be owned by either a non-profit or an entity that "holds the property for the sole benefit" of an otherwise qualifying nonprofit. TP § 7-202(b)(ii). Second, the property must be "necessary for and actually used exclusively for a charitable or educational purpose to promote the general welfare of the people" Maryland. TP § 7-202(b)(1)(i). As stated by the Tax Court in this case, however, "a State entity, the MTA, not a non-profit entity, owns the [P]roperty" and, accordingly, Appellant cannot obtain a partial exemption from property tax under TP § 7-202(b). It is not surprising, therefore, that Appellant does not challenge the Tax Court's ruling covering Appellant's Applications for property tax exemption under TP § 7-202(b), since there is no dispute that MTA, a government agency, is the record owner of the Property.

[7] The Tax Court "reject[ed]" Appellant's argument based on the statutory history of TP § 6-102(e); namely, that under the predecessor statute—former Article 81 of the Maryland Code (1957, 1961 Supp.), § 8(8)(e)—a lessee was required to "be in actual possession of the leased property" to be subject to property tax. We address the substance of this argument and former Article 81 § 8(8)(e) in our discussion.

7

require tax collectors "to not just consider [Appellant's] status as a government lessee, but also the specific uses of the many offices and parking spaces th[at Appellant] sublets[,]" in addition to the need to subsequently "separately value[]" the "individual sublets . . . in the context of [their] proportional value to the aggregate valuation of the leasehold." The Tax Court also expressed concern that granting the exemptions in the absence of "specific statutory authority" would lead to an "absurd result" by enabling Appellant and similarly situated entities who "engage in a for-profit real estate rental business" to "realize a tax advantage not available to other for-profit businesses leasing from the government." The Tax Court elaborated that granting a tax exemption to landlords whose interest in property stems from a lease of government property, while denying exemptions to otherwise identical landlords whose interest stems from a lease of private property, would result in unfair competition.

Moving on, the Tax Court explained that Appellant's reliance on dicta from two of our reported decisions was misplaced because neither case was decided under TP § 6-102(e). (Construing *Townsend Balt. Garage, LLC v. Supervisor of Assessments of Balt. City*, 215 Md. App. 133 (2013); and *Supervisor of Assessments of Balt. Cnty. v. Greater Balt. Med. Ctr., Inc.*, 202 Md. App. 282 (2011) (hereinafter "*GBMC*")). More specifically, the Tax Court observed that both cases hinged on "a consideration of the [record] ownership of the improvements on the propert[ies]" at issue, rather than TP § 6-102(e).

Finally, the Tax Court identified a 1929 decision by our Supreme Court, *Grand Lodge of Maryland, K. P. v. City of Baltimore*, 157 Md. 542 (1929), for the proposition that "exemptions from taxation shall be strictly construed." (Quoting *Grand Lodge*, 157

8

Md. at 546; other citation omitted). The Tax Court concluded that "an act of the General Assembly" would be required to grant Appellant the exemptions it sought and, accordingly, the court affirmed the decision of the PTAB.

Appellant sought judicial review of the Tax Court's decision in the Circuit Court for Baltimore City. Following a remote hearing, the court affirmed the decision of the Tax Court by memorandum opinion and separate order entered April 14, 2023. The circuit court judge reasoned, in pertinent part; "First, [901, LLC] leases the Property from the MTA, a State government agency, and thus satisfies TP § 6-102(e)(1). Second, [901, LLC] uses the Property in connection with its for-profit business of leasing real property, thus satisfying TP § 6-102(e)(2)." The court distinguished *GBMC* and *Townsend* by noting that, unlike in *Townsend*, Appellant "was not required to sublease any part of the Property to any specific subtenant, including the MTA"; and unlike *GBMC*, Appellant "did not relinquish its rights in the Property back to the MTA."

Appellant noted a timely appeal to this Court on April 28, 2023.

## DISCUSSION

### Imposition of Property Tax under TP § 6-102(e)

#### a. Parties' Contentions

Appellant contends it is entitled to a partial exemption from property taxes under TP § 7-210(a) because a substantial portion of the Property is owned by the MTA and is devoted to a governmental use or purpose. This result, Appellant says, flows from basic tools of statutory construction, such as the plain meaning rule and the principle that related statutes ought to be construed together. According to Appellant, "mischief" will result

9

from any construction placed on the term "use"—as that word is used within TP § 6-102(e)—that does not focus on a given property's *end* use, because a contrary construction would permit entities to avoid tax by strategically leasing government property to a tax-exempt entity (such as a non-profit) that then subleases the property to a for-profit business.

In any case, Appellant claims that our analysis of TP § 6-102(e) is controlled by *Townsend* and *GBMC*. The operation of TP § 6-102(e) was squarely addressed by this Court in *Townsend*, Appellant opines, and the Tax Court flagrantly ignored the principles of *stare decisis* by disregarding *Townsend*. Appellant also claims that, although we did not construe TP § 6-102(e) in *GBMC*, in that case we did construe the term "use" to mean a property's end use.

Appellant states that under the predecessor to TP § 6-102(e), section 8(8)(e) of former Article 81, Maryland Code (1957, 1961 Supp.),[8] it would have been entitled to the partial exemptions because that statute provided that the "interest or privilege of a[] lessee" of government property was taxable "to the same extent as though the person in possession or the user thereof were the owner of such property" if the lessee maintained "the privilege to use or possess such property in connection with a business conducted for profit[.]" *See Cordish*, 427 Md. at 10-11 (reproducing excerpt of former Article 81). According to

---

[8] Appellant refers to former Article 81, section 8(8)(e), as that statute was originally enacted by the General Assembly in 1961, and in its opening brief quotes *Cordish*, 427 Md. at 10-11 to provide an excerpt of the statute. As we discuss in the body of this opinion, the statute was amended several times before ultimately being supplanted by TP § 6-102(e) of the Tax-Property Article in 1985. *See Md.-Nat'l Cap. Park & Plan. Comm'n v. State Dep't of Assessments & Tax'n*, 110 Md. App. 677, 692 (1996).

Appellant, the phrase "in possession or the user" squarely focuses on the end use of the leased property, not any intermediary use.

Finally, Appellant asserts that it is necessary to grant the partial exemptions in order to protect the future of public-private development projects. If the partial exemptions are not granted, Appellant asserts that "Appellant and other developers will either raise rents charged to exempt organizations, refuse to lease similar properties to these exempt causes, or, more likely, opt out of future public-private projects altogether."

The Supervisor urges us to affirm the decision of the Tax Court because "Section 6-102(e) [of the Tax-Property Article] applies with full force[.]" According to the Supervisor, Appellant is "in fact us[ing] the [P]roperty in connection with" its "for-profit business of leasing real property[,]" which demonstrates that the requirements of TP § 6-102(e)(2) are satisfied. Partial exemptions under TP § 7-210(a) are not available to Appellant, the Supervisor says, because TP § 7-210(a) is expressly made subject to TP § 6-102. The Supervisor rejects Appellant's insistence that the term "use[,]" as employed by TP § 6-102(e), can refer solely to how an end-user utilizes the subject property. Such a construction, the Supervisor posits, would inhibit the State's interest in convenient and efficient tax collection. (Citing *Cordish*, 427 Md. at 11). The Supervisor also asserts that interpreting "use" in TP § 6-102(e) to encompass for-profit leasing would not "interfere with[] the proper operation of other statutes."

The Supervisor insists that Appellant's reliance on *Townsend* and *GBMC* is misplaced because "neither was decided under [TP] § 6-102(e) and both are factually distinguishable[.]" The Supervisor also contends that Appellant's policy concerns lack

11

merit, because the imposition of tax under TP § 6-102(e) will merely "place [Appellant] on the same footing as any other for-profit lessor of property to the government"; and because it is "speculative" to conclude that "taxing the [P]roperty in this case . . . will discourage public-private partnerships and financing arrangements like those at issue here."

### b. Standard of Review

"The Tax Court is an adjudicatory administrative agency in the executive branch of state government." *Comptroller of Md. v. FC-GEN Operations Invs. LLC*, 482 Md. 343, 358 (2022) (hereinafter "*FC-GEN*") (citations omitted). "A decision of the Tax Court is subject to the same standards of judicial review as contested cases of other administrative agencies[.]" *Id.* at 358 (citation omitted). "When reviewing a decision of an administrative agency, this Court looks through the decisions of the circuit court . . . and evaluates the decision of the agency." *Id.* at 359 (citation omitted).

"A court's role in reviewing an administrative agency adjudicatory decision is narrow[.]" *Comptroller of Treasury v. Taylor*, 465 Md. 76, 86 (2019) (quotation omitted). Our review "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Id.* (quotation omitted). That said, "[w]e owe no deference when the agency's conclusions are premised on an error of law." *Harford Cnty. People's Couns. v. Bel Air Realty Assocs. Ltd. P'ship*, 148 Md. App. 244, 259 (2002) (citations omitted). The Supreme Court of Maryland recently clarified that, "where deference is owed to an agency in the context of the

interpretation and application of tax laws, the governmental agency to which deference is owed is the Comptroller, not the Tax Court." *FC-GEN*, 482 Md. at 364; *see also id.* at 378 ("The deference owed to an agency's interpretation of a statute[] . . . is always tempered by the judicial branch's constitutional duty to interpret the law."); *Clear Channel Outdoor Inc. v. Dir., Dep't of Fin. of Balt. City*, 244 Md. App. 304, 313 (2020) ("We review the Tax Court's decisions of law *de novo*.") (citation omitted), *aff'd*, 472 Md. 444 (2021) (internal citations and quotations omitted), *cert. denied*, 142 S. Ct. 2692 (2022). "An agency decision based on . . . statutory interpretation is a conclusion of law." *Kor-Ko Ltd. v. Md. Dep't of the Env't*, 451 Md. 401, 412 (2017) (quotation omitted).

### c. Legal Framework

"[I]t is useful to state the applicable provisions of statutory interpretation that guide our analysis." *FC-GEN*, 482 Md. at 379. In construing the applicable provisions of the tax law:

> We read the plain meaning of the language of the statute "as a whole, so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Wheeling v. Selene Fin. LP*, 473 Md. 356, 376, 250 A.3d 197 (2021) (quoting *Koste v. Town of Oxford*, 431 Md. 14, 25-26, 63 A.3d 582 (2013) (internal quotations omitted)). "Additionally, we neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application." *Wheeling*, 473 Md. at 376-77, 250 A.3d 197 (quoting *Lockshin v. Semsker*, 412 Md. 257, 274, 987 A.2d 18 (2010)) (cleaned up). "If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resorting to other rules of construction." *Id.* at 377, 250 A.3d 197 (quoting *Lockshin*, 412 Md. at 275, 987 A.2d 18). That said, as the Court recently reiterated in *Wheeling*,

[w]e, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

473 Md. at 377, 250 A.3d 197 (quoting *Lockshin*, 412 Md. at 275-76, 987 A.2d 18) (internal quotations omitted).

Additionally, because we are tasked with interpreting a tax statute, "this Court recognizes that any ambiguity within the statutory language must be interpreted in favor of the taxpayer." [*Comptroller of the Treasury v.*] *Citicorp* [*Int'l Commc'ns, Inc.*], 389 Md. [156,] 165, 884 A.2d 112 [(2005)] (quoting *Supervisor of Assessments of Anne Arundel County v. Hartge Yacht Yard, Inc.*, 379 Md. 452, 461, 842 A.2d 732 (2004) (quoting *Comptroller v. Clyde's of Chevy Chase, Inc.*, 377 Md. 471, 484, 833 A.2d 1014 (2003))).

*FC-GEN*, 482 Md. at 379-81 (alteration in original). "With these principles in mind, we turn to the applicable provisions of the" Tax-Property Article. *Id.* at 381.

Under TP § 6-101(a)(1), "[e]xcept as otherwise provided in this article, all property located in this State is subject to assessment and property tax and is taxable to the owner

14

of the property." TP § 6-101(a)(1). The "owner of real property for tax assessment purposes" is "the record owner, as listed in the land records[.]" *Townsend Balt. Garage, LLC v. Supervisor of Assessments of Balt. City*, 215 Md. App. 133, 144 (2013) (quoting *GBMC*, 202 Md. App. 282, 292 (2011)).

Property owned by federal, state and local government entities is generally not subject to property tax by virtue of TP § 7-210, which provides:

> (a) Except as otherwise provided in § 6-102 of this article and except as otherwise provided under this section, government-owned property is not subject to property tax, if the property:
>> (1) is devoted to a governmental use or purpose; and
>> (2) is owned by:
>>> (i) the federal government;
>>> (ii) the State;
>>> (iii) a county or a municipal corporation; or
>>> (iv) an agency or instrumentality of the federal government, the State, a county, or of a municipal corporation.
>
> (b) The exemption provided for the property owned by an agency or instrumentality in subsection (a)(2)(iv) of this section applies only to the extent that a law exempts the property.

TP § 7-210 (headings omitted).

As stated in TP § 7-210, the general rule that government-owned property is not subject to property tax, is subject to exceptions, including, as provided in TP § 6-102(e), which states:

> (e) Unless exempted under § 7-211, § 7-211.1, § 7-244, 7-246,[9] or § 7-501 of this article, the interest or privilege of a person in property that is owned by the federal government, the State, a county, a municipal corporation, or an agency or instrumentality of the federal government, the State, a county, or a municipal corporation is subject to property tax as though the lessee or

---

[9] The reference, within TP § 6-102(e), to TP § 7-246, was added by the General Assembly in 2021. 2021 Md. Laws, ch. 109, § 1 (S.B. 877).

15

the user of the property were the owner of the property, if the property is leased or otherwise made available to that person:

> (1) by the federal government, the State, a county, a municipal corporation, or an agency or instrumentality of the federal government, the State, a county, or a municipal corporation; and
> (2) with the privilege to use the property in connection with a business that is conducted for profit.

TP § 6-102(e). *See also* TP § 8-113 ("Interests subject to property tax under [TP] § 6-102 of this article shall be valued as if the lessee, person in possession, or user of the property were the owner of the property."). As is pertinent to this case, by the plain text of TP § 6-102(e), a person or entity that leases property from the government will be subject to property tax if the person or entity obtains, by virtue of the lease, "the privilege to use the property in connection with a business that is conducted for profit." TP § 6-102(e)(2).

When interpreting the provisions of TP §§ 6-102 and 7-210, we are mindful that "[p]roperty tax exemptions provided under [Title 7 of the Tax Property Article] shall be strictly construed." TP § 7-101.

### d. Analysis

Appellant is not entitled to partial exemptions from property taxes under TP § 7-210(a) because, as instructed by the plain text of TP § 6-102(e), Appellant is the "lessee or the user of the property"; the Property was "leased" to Appellant by an "agency . . . of . . . the State"; and Appellant has "the *privilege to use* the property in connection with a business that is conducted for profit." TP § 6-102(e) (emphasis added). Therefore, the Property "is subject to property tax as though [Appellant] were the owner of the property[.]" *Id.* Because TP § 7-210(a) is expressly made subject to the operation

16

of TP § 6-102, it is irrelevant that portions of the property at issue here would—*but for* TP § 6-102(e)—be exempt from property tax. We explain.

To begin, we "read the plain meaning of the language of the statute 'as a whole, so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *FC-GEN*, 482 Md. at 379 (quoting *Wheeling*, 473 Md. at 376).

As previously stated, in Maryland the record owner of real property is generally subject to property tax. TP § 6-101(a) ("[P]roperty tax . . . is taxable to the owner of the property."); *see also Townsend*, 215 Md. App. at 143 ("[U]nder Maryland law, the record owner, as listed in the land records, is the owner of real property for tax assessment purposes." (emphasis removed) (quoting *GBMC*, 202 Md. App. at 292)). However, under TP § 6-102(e), the "interest or privilege" of a "lessee or . . . user" of property that is owned by the government will be subject to property tax as if the person were the hypothetical owner of the property if the express exemptions do not apply and the property is "leased or otherwise made available to th[e] person": 1) by a qualifying government entity under TP § 6-102(e)(1); *and* 2) "with the **privilege to use** the property in connection with a business that is conducted for profit." TP § 6-102(e)(2) (emphasis added).

In this case, there is no dispute that Appellant leased the Property from a qualifying government entity under TP § 6-102(e)(1). The critical inquiry is thus whether the Property was leased to Appellant with the "privilege to use" the Property "in connection with a business that is conducted for profit." TP § 6-102(e)(2).

17

### i. The "Privilege to Use"

According to Appellant, the scope of TP § 6-102(e)(2) turns on the meaning of the word "use[,]" and this word must be read to refer to a property's actual end-use, and not any intermediary use. In addressing this contention, we begin by explaining why Appellant's reliance on the statutory history of TP § 6-102(e) does not compel the conclusion that Appellant proposes.

Section 6-102(e) is derived from the text of Section 8(8)(e) of former Article 81. As originally enacted by 1961 Md. Laws, ch. 884 (S.B. 78), Article 81 § 8(8)(e) provided, in pertinent part:

> Leaseholds and Other Limited Interests in Real . . . Property—No Leasehold or other limited interest in real . . . property shall be subject to taxation except the following which shall be subject to taxation in the same amount and to the same extent as though the **person in possession or the user thereof** were the owner of such property.
> * * *
> (e) The **interest or privilege of any lessee**, bailee, pledgee, agent, or other person **in possession of or using any real** . . . **property** which is owned by the federal or state governments, and which is **leased**, loaned, or otherwise made available to any person, firm, corporation, association, or other legal entity, **with the privilege to use or possess such property in connection with a business conducted for profit** . . . shall be subject to taxation in the same amount and to the same extent **as though the lessee or user** were the owner of such property[.]

1961 Md. Laws, ch. 884, at § 1 (S.B. 78) (bold emphasis added; other emphasis removed). This statutory language plainly contemplated that an entity may use, yet not possess, property subject to § 8(8)(e). The opposite is also true—an entity might possess (but not use) subject property. Indeed, an entity that leases property from the government for the purpose of subleasing that same property may be said to *possess* (but not use) the property

18

between the commencement of its lease with the government, but before the commencement of any sublease; and thereafter, to *use* (but no longer possess) pertinent portions of the property during the terms of any sublease, by renting the property to others for profit.

Of course, Article 81 was eventually supplanted by the Tax-Property Article in 1985. *Md.-Nat'l Cap. Park & Plan. Comm'n v. State Dep't of Assessments & Tax'n*, 110 Md. App. 677, 692 (1996). We summarized the statute's progression as follows:

> In 1968, the General Assembly redesignated § 8(8)(e) as § 8(6)(e) of Article 81. That change did not last long, for in 1970, the General Assembly renumbered § 8(6)(e) as § 8(7)(e)[.] Chapter 526, Acts 1970. [In] 1983 . . . subparagraph (e) [was divided] into sub-subparagraphs[.] Chapter 640, Acts 1983. In 1985, the General Assembly repealed § 8(7)(e) of Article 81, along with other sections and subsections, reenacted, and recodified them in the Tax–General and Tax–Property Articles. Chapter 8, Acts 1985.

*Id.* Just prior to the creation of the Tax-Property Article, the text of Art. 81 § 8(7)(e) provided, in part:

> (7) No leasehold or other limited interest in real . . . property shall be subject to taxation except the following which shall be subject to taxation in the same amount and the same extent as though the person in possession or the user thereof were the owner of such property.
>
> (e)(1)(I) The interest or privilege of any lessee, bailee, pledgee, agent or other person in possession of or using any real . . . property which is owned by [an enumerated governmental entity] and which is leased, loaned, or otherwise made available to any . . . legal entity, with the privilege to use or possess such property in connection with a business conducted for profit . . . shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property[.]

1983 Md. Laws, ch. 640, at 2041 (H.B. 990).

19

The Revisor's Note to 1985 Md. Laws, ch. 8 (S.B. 1), as concerns the creation of TP § 6-102, states in pertinent part that:

> This section is new language derived without substantive change from the introductory language of former Art. 81, § 8(7) and from (a) through (e)(i), except for the exception in (e)(i).
>
> * * *
>
> In subsection (a) of [TP § 6-102], the former reference to the "person in possession or the user" being treated as the owner is deleted as included in the introductory phrase "[e]xcept as otherwise provided in this section".
>
> * * *
>
> [I]n the introductory language of [TP § 6-102](e) of this section, the former reference to any "lessee, bailee, pledgee, agent or other person in possession of or using any real or personal property" is deleted as unnecessary since subsection (e) . . . is revised to provide for "the interest or privilege of a person in property . . . if the property is leased or otherwise made available to that person[.]"[]
>
> In [TP § 6-102](e)(2) . . . the former word "possess" is deleted in light of the use of the word "use".

1985 Md. Laws, ch. 8, at 124-25 (Revisory Note to TP 6-102).

Like the former provisions of Article 81, the text of TP § 6-102(e) refers to the "lessee[s] or . . . user[s]" of property who have "leased" property from the government with "the privilege to use" said property in "connection with" a business conducted for profit. TP § 6-102(e). In the context of TP § 6-102(e), one may be a lessee of property without actively using it; for example, by taking possession of property pursuant to a lease but letting it sit vacant. One may also use property without actually possessing it; for example, a lessee who sublets leased property for profit. Although TP § 6-102, unlike former Article 81 § 8(8)(e), no longer employs the terms "possess" or "possession," TP § 8-113 expressly contemplates that TP § 6-102 may apply to a "lessee, person in possession, **or** user of . . . property[.]" TP § 8-113 (emphasis added).

20

After examining the term "use" and "user" as employed in TP § 6-102(e) against the language of its predecessor statute and within the context of the larger statutory scheme, we cannot credit Appellant's central contention that the terms "use" and "user" refer only to a subject property's *end* use or user. Indeed, Appellant's argument would render the word "lessee" nugatory by ignoring the disjunctive "or" and, thus, add a new requirement that—to trigger TP § 6-102(e)—a lessee also have possession and/or physically use the property at the ground level. *See* TP § 6-102(e) ("lessee **or** the user" (emphasis added)); § 8-113 ("lessee, person in possession, **or** user" (emphasis added)).

Confining our focus, for the moment, to how the term "use" is employed by subsection (e)(2) of TP § 6-102, we emphasize that the term "use" is modified by the words "*privilege to*[.]" TP § 6-102(e)(2) (emphasis added); *see also FC-GEN*, 482 Md. at 379 (stating the rule against surplusage). While the term "privilege" has multiple meanings in law, as pertinent here, "[a] privilege grants someone the legal freedom to do *or not to do* a given act." *Privilege*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added); *see also Privilege*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/privilege, *archived at* https://perma.cc/LWA3-T46H (last visited March 20, 2024) (defining "privilege" in part as "a right or immunity granted as a peculiar benefit, advantage, or favor"). Simply put, a person may have the *privilege* to do something even if they *never do it*. With this context, it is clear that the term "use"—as employed by TP § 6-102(e)(2)—is not limited to a property's *actual* use; instead, the phrase "privilege to use" encompasses the property's *permissible potential* uses. Furthermore, there is no indication that the phrase refers only to a property's *end* use. A landlord of a vacant

21

building has the "privilege" to "use" the vacant units "in connection with" their for-profit business (of leasing those units) regardless of how future tenants may *in turn* use the property.

Here, none of the agreements pertaining to Appellant's interest in the Property meaningfully restrict Appellant's ability to use the Property (or portions thereof) in connection with its for-profit business, whether that use be leasing the Property to others,[10] or operating its own for-profit business on the premises. Furthermore, Appellant has not pointed to any extraneous authority, such as a statute or local ordinance, that would preempt its ability to use the property this way. Accordingly, Appellant had "the privilege to use the property in connection with a business that is conducted for profit." TP § 6-102(e). Appellant draws our attention to *Supervisor of Assessments of Baltimore City v. Chase Associates*, 306 Md. 568 (1986), where our Supreme Court stated "use in the present context [of former Maryland Code (1957, 1980 Repl. Vol.), Article 81, § 232(8)(d)] refers to the nature of the activities pursued on the property." 306 Md. at 577-78 (citation omitted). According to Appellant, the Court's construction of the term "use" in *Chase*

---

[10] As correctly summarized by the circuit court, "[w]hile [Appellant] has a limited obligation to provide parking spaces for governmental and commercial tenants in the vicinity of the Property, there is no express requirement that specific parking spaces or office spaces be provided to specific tenants, nor is there an explicit guarantee of a lease back to the MTA. Petitioner is not restricted in subleasing spaces within the Property[.]" *901, LLC v. Supervisor of Assessments of Balt. City*, No. 24-C-21-000219, slip op. at 14 (Balt. City Cir. Ct. Apr. 14, 2023). We also note that none of the agreements between Appellant (or Symphony Center) and MTA, dating back to the year 2000, mention or appear to contemplate any tax exemptions for subleases to government entities—and the record does not indicate that Appellant raised the issue of partial tax exemptions under TP § 7-210(a) until 2017.

22

*Associates* is emblematic of how that term should be understood throughout the Tax Property Article's provisions pertaining to real property assessments. We disagree, but to explain why, additional context is necessary.

In *Chase Associates*, the Court examined the meaning of the following statutory text:

> [A]ny property shall be reviewed, physically inspected, and revalued . . . in any year that:
> (1) [. . .]
> (2) A substantial **change occurs in the use** of the property[.]

*Id.* at 570-71 (emphasis added) (quoting Art. 81, § 232(8)(d)).[11] The Court noted that, in applying Section 232(8)(d)(2) of Article 81, it was the practice of the Tax Court to "premise[] . . . its identification of change in use with change in value." *Id.* at 576. The Court disagreed with this practice, stating:

> The purpose . . . of § 232(8)(d) was clearly to improve the accuracy with which a property's assessed value reflects its current value throughout a triennial cycle. In implementing this purpose, however, the legislature chose not to provide generally that any change in value would precipitate mid-cycle reassessment, but rather to link reassessment to the occurrence of certain specified events, including a substantial change in use, likely to presage a change in value. The legislature's reasons for drafting the statute in this manner may well have included lessening the tremendous administrative burden the more general provision would have created, and increasing the predictability and consistency with which the reassessment process would be invoked.
>
> To interpret "change of use" to include any event that might change the value of the property would stretch the word "use" well beyond the meaning it can bear, and would disregard the legislature's deliberate choice of a specific

---

[11] The *Chase Associates* Court explained that "[b]y chapter 8 of the Acts of 1985, the provisions of Article 81 governing real property taxation were recodified with amendments as part of the new Tax-Property Article" which "bec[a]me effective [on] February 1, 1986[.]" *Chase Assocs.*, 306 Md. at 570 n.1.

23

rather than a general drafting style. The ordinary meaning of use is simply the purpose or object to which something is applied. *See Webster's Third New International Dictionary* 2523 (1971, unabridged). More specifically, **use in the present context refers to the nature of the activities pursued on the property**. [Citation omitted]. Although a change in use may occasion or coincide with a change in value, the concepts are entirely distinct, and the Tax Court erred in equating them for purposes of § 232(8)(d)(2).

*Id.* at 577-78 (bold emphasis added). Accordingly, the Court determined that the Tax Court erred in finding a substantial change in use had occurred—for the purposes of Art. 81 § 232(8)(d)(2)—where an apartment building was converted to a condominium regime on the theory that such conversions typically alter the value of the subject property. *Id.* at 576, 578-79. As the Court explained, "[a] condominium regime is nothing more than a form of ownership of real property" and, while a condominium conversion "does constitute a change in form of ownership, it does not, of itself, constitute a change in the use of the property" because "the nature of the activities pursued on the . . . property remained unchanged following the . . conversion." *Id.* at 578 (citations omitted).

Thus in *Chase Associates*, the word "use" as applied in the context of former Article 81 § 232(8)(d)(2) concerned substantial changes in the "nature of activities pursued" on a particular property. *Id.* (citation omitted). This is very different from a determination whether a given entity has the "privilege" to use property in a particular way under TP § 6-102(e). Moreover, whereas TP § 6-102(e) expressly indicates that there may be a degree of separation between the subject property and a particular for-profit use of the property through the language "in connection with"; Article 81 § 232(8)(d)(2) contained no such language. Accounting for the context in which the term "use" appeared in former Article 81 § 232(8)(d)(2) and the purpose of the statute as described by the *Chase Associates* Court,

24

it was plainly reasonable for the Court to declare that "use *in the present context* refers to the nature of the activities pursued on the property." *Chase Assocs.*, 306 Md. at 577-78 (emphasis added) (citation omitted).

Appellant also asserts that many of the exceptions to TP § 6-102(e), such as those found within TP § 7-211(a) and (b), would "make little sense if 'use' was not determined by the actual user of the property." Appellant is correct that many of the exceptions to TP § 6-102(e), including TP § 7-211(a) and (b), turn on whether property is physically used in a particular way at the ground level. But the plain language of those statutes distinguishes the context in which the term "use" is employed from that in TP § 6-102(e).

For example, TP § 7-211(b)(2), provides in pertinent part that:

> **An interest of a person in property** of the federal government, the State, a county, or a municipal corporation **is not subject to property tax, if the property is used for a concession** that: (i) is located in a public airport, park, market, or fairground[.]

TP § 7-211(b)(2) (emphasis added).

Contrary to Appellant's contentions, the operation of TP § 7-211(b)(2) does not appear to turn on whether it is the original lessee or a sublessee of government property that uses the property "for a concession[.]" TP § 7-211(b)(2). Facially, a lessee of government property who meets the conditions of TP § 6-102(e) may nonetheless be exempt from property tax because a sublessee uses the property to establish a qualifying concession under TP § 7-211(b)(2).[12]

---

[12] Appellant asserts that a similar problem could arise under TP § 7-211(a)(3), which provides that: "An interest of a person in . . . real property of the federal government or of

(Footnote Continued)

Elsewhere in its brief, Appellant stresses that the outcome of this case is controlled by *Townsend Baltimore Garage, LLC v. Supervisor of Assessments of Baltimore City*, 215 Md. App. 133 (2013). We disagree, as the facts of *Townsend* are distinguishable from the instant case and, in any case, *Townsend*'s limited discussion of TP § 6-102(e) was dicta. We explain.

In *Townsend*, the State of Maryland leased two parcels of land that it owned to a non-profit 501(c)(3) organization, UMB Health Sciences Research Park Corporation ("RPC"). *Townsend*, 215 Md. App. at 135. RPC subleased one of the parcels ("Parcel 1") to Baltimore LSRP One Business Trust ("BLSRP"), a for-profit entity. *Id.* at 135. BLSRP had agreed to finance and build "an office and laboratory building" on Parcel 1, and the sublease stipulated that, during the term of the sublease, BLSRP held "title to the improvements[.]" *Id.* at 136. Parcel 1 was then subleased *again*, this time with BLSRP subleasing the premises to the State of Maryland for use by the University of Maryland, Baltimore ("University"). *Id.* As stipulated by the parties, "85% of the office space [on Parcel 1] is used for University purposes." *Id.* (footnote omitted).

---

the State is not subject to property tax if that property: (i) is situated on land that is owned by the federal government and located within the defined boundaries of a military installation; and (ii) is used for national defense purposes or for housing for military personnel and their families." TP § 7-211(a)(3). Appellant's contentions here are unpersuasive for identical reasons. Facially, TP § 7-211(a)(3)(ii)'s indication that property may be exempt from tax where the property is "used" for "housing" military families contemplates that an entity, in a similar position as Appellant, may *lease* property from the government and subsequently *sublease* that property to military families. A lessee/sublessor may thus satisfy the conditions of TP § 6-102(e), but be exempt from that statute's operation by virtue of TP § 7-211(a)(3).

The other parcel ("Parcel 2") was subleased by RPC to Townsend Baltimore Garage, LLC ("Townsend Garage"), another for-profit entity. *Id.* Townsend Garage had agreed to "finance and construct a parking garage on the land" and, according to the sublease, "title to the improvements shall be held" by Townsend Garage during the term of the sublease. *Townsend*, 215 Md. App. at 136. In turn, Townsend Garage licensed "150 parking spaces to the State of Maryland for the use of UMB"; as stipulated by the parties on appeal, 25% of the garage was "used for University purposes." *Id.* at 136.

The *Townsend* Court noted that there was never any doubt that these specific portions of the parcels would, in the end, be subleased/licensed back to the State for use by the University. Specifically: "appellants' lease of the portions of the property that are the subject of this appeal was *conditioned upon and restricted to use by the State for University purposes*." *Id.* at 136 n.2 (emphasis added). In other words, both BLSRP and Townsend Garage subleased (or licensed) portions of the parcels back to the State for use by the University because they were *required* to do so.

BLSRP and Townsend Garage sought partial exemptions from property tax for *these* portions of the parcels—the portions that they were required to sublease/license back to the State, for use by the University. *Id.* at 135-36. The Tax Court, however, determined that BLSRP and Townsend Garage were subject to property tax because they "were the *owners* of the improvements [they] constructed upon the State's land[,]" and the circuit court affirmed the decision of the Tax Court. *Id.* at 134, 143.

The *Townsend* Court highlighted that in *GBMC*, we instructed that "under Maryland law, **the record owner, as listed in the land records, is the owner of real property for**

27

**tax assessment purposes.**" *Townsend*, 215 Md. App. at 143 (emphasis supplied by *Townsend*) (quoting *GBMC*, 202 Md. App. at 292). In both cases—*Townsend* and *GBMC*—the Supervisor relied on lease documents to conclude the lessees were the owners of the subject properties for tax purposes because the lease documents "referred to the for-profit entity as the owner of the improvements." *Id.* at 145. But in both cases "there was no document of record that transferred record title in the improvements . . . to the for-profit entity" and, consequently, those entities had not become the owners of the properties at issue for the purposes of imposing property taxes. *Id.* *See also* TP § 6-101(a) ("Except as otherwise provided in this article, all property located in this State is subject to assessment and property tax and is taxable to the owner of the property."). We reversed the judgment of the circuit court and remanded the matter with instructions for the circuit court to reverse the ruling of the Tax Court. *Townsend*, 215 Md. App. at 145.

In *Townsend* we explained that "fee simple interest [in Parcels 1 and 2 was] undisputedly owned by the State" and that "in most cases, [property owned by the State is] exempt from property taxation" under TP § 7-210. *Id.* at 140. We also acknowledged that the plain text of TP § 7-210 made its terms subject to the provisions of TP § 6-102 and that, on appeal, the Supervisor of Assessments "assert[ed] . . . that the leasehold interests of the appellants [were] within the scope of . . . TP § 6-102(e)(2)[.]" *Id.* at 141-42. However, TP § 6-102(e) did not control the case-at-bar because the Tax Court's decision did not rely on that section of the Code. We explained:

> The Supervisor asserts . . . that the leasehold interests of the appellants are within the scope of taxable interests covered by TP § 6-102(e)(2) because . . . the land is subleased to Townsend and BLSRP for use in

28

connection with businesses that are conducted for profit. We observe, however, that this does not appear to have been the rationale for the Tax Court's ruling. Nor is it at all clear that the assertion withstands scrutiny.

Although Townsend and BLSRP are both sublessees of the respective parcels, they are also lessors of the improved property, and the lessee under each of the subject agreements is the State of Maryland, for the use of the University System of Maryland on behalf of its constituent institution, University of Maryland, Baltimore. And the parties stipulated that the portions of the office building and parking garage that are the subject of the respective leases at issue in this appeal *are* being used for University purposes.

**But the Tax Court's decision was not based upon TP § 6-102(e)**; instead, the Tax Court concluded as a matter of law that the appellants were the *owners* of the improvements the appellants constructed upon the State's land. Although the appellants are treated as 'owners' for some purposes in the leasing documents, our holding in [*GBMC*, 202 Md. App. 282 (2011)] makes it clear that it was error for the Supervisor [of Assessments] to treat the appellants as the owners for property tax purposes.

*Id.* at 143 (bold emphasis added) (footnote omitted). *See also Taylor*, 465 Md. at 86 ("We cannot uphold the Tax Court's decision on grounds other than the findings and reasons set forth by the Tax Court." (quotation omitted)).

Because the Tax Court's decision "was not based upon TP § 6-102(e)[,]" *Townsend*, 215 Md. App. at 143, our discussion of TP § 6-102(e) was dicta. Furthermore, as distinguished from the instant case, the *Townsend* Court's discussion of TP § 6-102(e) occurred against the backdrop that the appellants' "lease of the portions of the property that [were] the subject of th[e] appeal was conditioned upon and restricted to use by the State for University purposes." *Townsend*, 215 Md. App. at 136 n.2. In any case, we did not reach this issue in *Townsend*, nor do we express any opinion about it today.

29

In *Townsend*, because "the State [was] the owner of the land and the improvements" on both Parcels 1 and 2, we held that the "stipulated percentage of th[e] improvements that are used for University purposes remains exempt from real property taxes." *Townsend*, 215 Md. App. at 145. Because this holding was not premised on the operation of TP § 6-102(e), and because the facts underlying the Court's limited dicta pertaining to that subsection are distinguishable from the instant case, Appellant's reliance on *Townsend* is unpersuasive. When placed in proper context, it is clear that *Townsend* was premised solely on TP § 7-210. Portions of Parcels 1 and 2 that were "restricted to use by the State for University purposes[,]" *id.* at 136 n.2, satisfied the requirement that property be "devoted to a governmental use or purpose[.]" TP § 7-210(a)(1). Subsection (a)(2) was also satisfied, because it remained "undisputed[]" that the State held the fee simple interest in both parcels and, critically, the Tax Court had not relied on TP § 6-102 to find that BLSRP or Townsend Garage must be treated as the hypothetical owners of the leased premises for tax purposes. *Townsend*, 215 Md. App. at 140, 143.

Appellant's reliance on *GBMC* is also misplaced.

The pertinent facts of *GBMC* are as follows: GBMC, a nonprofit hospital, entered into a ground lease with BHI LLC ("BHI"), as part of a "structured lease and leaseback financing arrangement[.]" *GBMC*, 202 Md. App. at 286-87 (quotation omitted). Under this arrangement, BHI built an office building and parking garage on GBMC's land, and

thereafter subleased the improved property back to GBMC.[13] *Id.* The ground lease provided that, during its term, BHI would own and have title to these improvements. *Id.* at 287. Seeking to avoid property tax on the leased portion of GBMC's property, an agent employed by both BHI and GBMC "applied for a charitable property exemption on behalf of 'B[HI] leased to GBMC' with the Supervisor." *Id.* at 288. Assessors for the Maryland State Department of Assessments and Taxation denied the application, as did the Tax Appeals Board. *Id.* The Tax Court, however, vacated the denial of the charitable exemption and remanded the case to the Tax Appeals Board, holding that "[f]or the purposes of Maryland real property tax exemption law, GBMC [wa]s clearly the record owner of both the land and the improvement[s], and, therefore, [wa]s entitled to the charitable exemption." *Id.* at 289 (alterations in original). The circuit court affirmed the Tax Court's determination, and the Supervisor noted an appeal to this Court. *GBMC*, 202 Md. App. at 289.

The only issue on appeal was whether the Tax Court erred by determining GBMC was the owner of the office building and parking garage for property tax purposes, thus meeting the requirements of TP § 7-202(b)(1)(ii). *Id.* at 286. In the view of the Supervisor, various documents related to the structured lease and leaseback financing arrangement indicated BHI—not GBMC—was the owner of the improvements and, as a for-profit entity, BHI could not qualify for the charitable tax exemption. *Id.* at 289-90. We disagreed.

---

[13] Once built, the building was "occupied for medical office use by for-profit and non-profit providers" and "[t]he garage [was] used for parking cars of visitors to that building and other nearby facilities." *GBMC*, 202 Md. App. at 286-87.

Specifically, we explained that real property is taxable to the owner of the property and that, in Maryland, the "record owner" of land "as listed in the land records[] is the owner . . . for tax assessments purposes." *Id.* at 292 (citations omitted). Ownership of improvements on land is also linked to the land records, because "improvements affixed to the land are considered part of the real property, and ownership of the improvements follows title to the land." *Id.* at 293 (quotations omitted). Accordingly, "subject to express statutory exceptions that [were] not applicable" in *GBMC*, "for someone other than the record landowner to own the improvements on the land, there must be a recorded deed or other instrument of record showing a transfer of the title[.]" *GBMC*, 202 Md. App. at 293 (citations omitted).

Applying these precepts to the facts of the case, we determined that GBMC remained the record owner of the land and improvements for property tax purposes because, among the various documents related to the structured lease and leaseback financing arrangement that *were* recorded, *none* included "language . . . transferring GBMC's record title ownership . . . to BHI[.]" *Id.* at 300. Any "unrecorded documents" could "not compel a different conclusion" because Maryland law "require[d] all transfers in property ownership to be recorded." *Id.* at 300.[14] We therefore agreed with the Tax Court's conclusion that "GBMC [was] the sole and exclusive owner of the improvements for Maryland real property tax purposes and for purposes of satisfying the ownership

---

[14] In any case, the *GBMC* Court explained that various unrecorded documents related to the structured lease and leaseback financing arrangement evidenced, "at most . . . *contractual* ownership of the Improvements by BHI LLC; they do not show title or record ownership . . . by BHI[.]" *GBMC*, 202 Md. App. at 300.

32

requirement under the charitable exemption statute." *Id.* at 300 (quoting the Tax Court's below opinion).

While we *did* discuss TP § 6-102(e) in *GBMC*, we clearly stated that TP § 6-102(e) was inapplicable because "neither GBMC nor BHI . . . is an agency of the State" as required by subsection (e)(1). *Id.* at 302. Moreover, our discussion of TP § 6-102(e) focused only on subsection (e)(1)—the requirement that the lessor be a qualifying governmental entity—and not subsection (e)(2), which concerns a lessee or user's "privilege to use the property in connection with a business that is conducted for profit." *Id.* at 301-02 (quoting TP § 6-102(e)).

Clearly, *GBMC*'s discussion of TP § 6-102(e) is not particularly relevant to the instant case. Perhaps for that reason, Appellant's brief instead draws our attention to *GBMC*'s discussion of TP § 6-102(d). However, like TP § 7-202, TP § 6-102(d) is not at issue here. Specifically, in *GBMC* the Supervisor also argued that BHI must be considered the owner for property tax purposes by operation of TP § 6-102(d), which provided, in pertinent part:

> *Other interest in real property.*—The following interests in real property are subject to property tax as though the person in possession or the user of the property were the owner of the property:
>     (3) an interest of a mortgagor or grantor under a deed of trust.

*GBMC*, 202 Md. App. at 304 (quoting TP § 6-102(d) (1985, 2007 Repl. Vol.)). The Supervisor's argument derived from the fact that BHI obtained the funds necessary to construct the improvements by obtaining a loan from a third-party lender, which was "evidenced by a Note and a Leasehold Deed of Trust" to the lender. *Id.* at 287 (quotation

33

omitted). We explained, however, that BHI was not a "grantor under a deed of trust" as that phrase is used in TP § 6-102(d)(3) because "BHI . . . never held record title to the Improvements, and therefore, could not have transferred the *legal title* to the Improvements as a grantor would under a deed of trust. . . . This is not the type of conveyance contemplated by [TP] § 6-102(d)(3)." *Id.* at 305.

We also explained that BHI could not be considered to be the "person in possession or the user of the property" under TP § 6-102(d) because:

> [P]rior to entering the Leasehold Deed of Trust, BHI . . . and GBMC agreed in the Improvements Lease that: (1) BHI . . . would lease back all of its "right, title and interest" in the land and the Improvements to GBMC; (2) GBMC may "at all times peaceably and quietly have, hold and enjoy the [land and the Improvements] during the Term of this Lease free from any claim by, through, or under [BHI LLC];" and (3) GBMC was the only party who had "possession" of the land and Improvements. BHI LLC, therefore, is neither "the person in possession . . . of the property," nor is the "user of the property," as required by [TP] § 6-102(d)(3).

*Id.* at 305 (second and third alterations in original). Appellant clutches to this portion of our discussion to claim that "[t]he *GBMC* Court specifically held that an intermediary for-profit developer/lessee, like [901, LLC], was 'neither a person in possession of the land or Improvements, **nor the user** of such property.'" (Quoting *GBMC*, 202 Md. App. at 305 (emphasis added)). Unlike *GBMC*, however, the documents pertaining to Appellant's lease of the Property do not contain similar restrictions on Appellant's possession or use of the property, or expressly mandate that Appellant *must* sublease the property to specific entities. *See GBMC*, 202 Md. App. at 305 (describing requirements under improvements lease that BHI lease subject property back to GBMC). Furthermore, while TP § 6-102(d)

34

refers to a "person in possession or the user of . . . property[,]" TP § 6-102(d); subsection

(e) refers to the "**lessee or** the user[.]" TP § 6-102(e) (emphasis added).

### *iii.* Public Policy

We are not persuaded by Appellant's assertion that subjecting it to property tax

under TP § 6-102(e) is contrary to public policy because some or all of the incidence of the

tax will be passed onto the government in the form of higher rents. Although in *Townsend*

we stated, in dicta, that an "anomalous situation" would arise if property taxes under TP §

6-102(e) were passed onto the government by virtue of "the lease . . . from BLSRP to the

State [which] include[d] a provision that would obligate the State, as tenant, to pay [the

taxes] as additional rent[,]" *Townsend*, 215 Md. App. at 143 n.3, that dicta does not control

here. Moreover, in *Meade Heights, Inc. v. State Tax Commission*, our Supreme Court

stated that "[t]he government cannot complain if the tax, otherwise sustainable increases

government costs by its economic incidence." 202 Md. 20, 29 (1953) (citations omitted).[15]

Elsewhere, Appellant quotes from *Mayor & City Council of Baltimore v. Boitnott*,

356 Md. 605, 619 (1999), for the proposition that TP § 6-102(e) will not apply unless the

government has "forego[ne] certain incidents of ownership (e.g., use and possession) by

leasing the property to a private entity." (Quoting *Boitnott*, 356 Md. at 619 (quoting the

appellants' brief)). It is clear, however, that in this case the MTA *has* forgone various

incidents of ownership, including its right to possess and/or physically use the Property

---

[15] In this case, Appellant notes that some of its governmental sublessees have agreed to pay stipulated portions of the property taxes assessed to the Property. The decision of a government agency to expressly agree—in a sublease—to pay a stipulated portion of any property tax assessed to Appellant has no bearing on our analysis.

without *entering a sublease and paying rent*. Even more problematic is Appellant's implicit proposition that the MTA did not forego incidents of ownership related to units of the Property that were subleased to *other* government entities, such as the U.S. General Services Administration or the office of the late Congressman Elijah E. Cummings.

Appellant also argues that, if the term "use" in TP § 6-102(e) does not refer solely to end-use, then "properties could be valued based not upon their actual usable value, but instead on whatever amorphous concept of 'use' some other party might ascribe." Appellant appears to contend, through this complaint, that it is not desirable or feasible to assess the value of a building if the owner of the building intends to lease (or sublease) portions of the building to third parties. We are not persuaded that local taxing authorities are unable to assess the value of such buildings.

Invoking public policy, Appellant contends that if it is subject to property tax under TP § 6-102(e), then "no for-profit developer could ever finance and develop government-owned land for use by the government and qualify for the exemption." The issues presented by this case are not so sweeping. We do not decide, for example, whether a similar result would obtain where the government leases property to a for-profit developer with terms that substantially restrict the developer's ability to sublease (or otherwise use) the property in connection with its for-profit business activities. In any case, Appellant has not pointed to any authority standing for the proposition that the purpose of TP §§ 7-210(a) or 6-102(e) is to exempt for-profit lessees/sublessors from property tax under the circumstances presented here.

36

Finally, we address Appellant's assertion that going forward government entities, for-profit developers, and the non-profit sector will be incentivized to "perpetuate mischief" in order to avoid the operation of TP § 6-102(e). Specifically, Appellant contends that government entities will "execute a master lease or ground lease with another government entity or non-profit" that, in turn, will "sublease the property to a for-profit concern, for its own use or for further subletting to other for-profit concerns, all to avoid the application of Section 6-102(e)." We are not presented with those circumstances here and, even if we were, it is far from clear that such "mischief" would achieve its intended result.

## Conclusion

For the above reasons, we affirm the decision of the Circuit Court of Baltimore City, and hold that the Supervisor, and in turn the PTAB and the Tax Court, correctly determined that partial property tax exemptions under TP § 7-210(a) were unavailable to Appellant because, under TP § 6-102(e), Appellant is a lessee of qualifying government property with the privilege to use the property in connection with a business that is conducted for profit.

**JUDGMENT OF THE CIRCUIT COURT OF BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

37